McGEE, Chief Judge.
Jeffrey Tryon Collington ("Defendant") appeals from his conviction of possession of a firearm by a felon. Defendant contends that the trial court committed plain error in instructing the jury on this charge. Defendant has not established plain error.
I. Background
Eyewitness Christopher Hoskins ("Mr.Hoskins") testified for the State at trial as follows: Mr. Hoskins went to the recording studio ("the studio") of Dade Sapp ("Mr.Sapp") to "hang out" on the evening of 1 October 2012. Shortly after he arrived, two men-identified by Mr. Hoskins as Defendant and Clarence Featherstone ("Mr.Featherstone")-entered the studio, passed by Mr. Sapp, and demanded to speak with someone named "Tony." Defendant asked Mr. Hoskins if he was "Tony" and pointed a gun ("the gun") at Mr. Haskins when he said he was not "Tony." A struggle for the gun ensued. According to Mr. Hoskins, both Defendant and Mr. Featherstone beat him up, went through his pockets, removed approximately $900.00 in cash that Mr. Hoskins had won in video poker earlier in the day, and then left the studio. At trial, Mr. Hoskins also identified the gun that reportedly was wielded by Defendant as belonging to Mr. Sapp.
Defendant testified that he and Mr. Featherstone did go to the studio on the evening of 1 October 2012. However, Defendant maintained that they went to the studio for Mr. Featherstone to purchase a large quantity of oxycodone from Mr. Hoskins. According to Defendant,
Sapp set up the drug deal by calling Mr. Hoskins on the cellphone and asking him to come to the studio. Hoskins said ... he would be there in about three minutes.
When Mr. Hoskins came into the studio he was wearing a hoody. You could not see his face. He walked straight back past us and made a left in the side booth which was a soundproof booth used for a studio, and Sapp walked in behind him.
During that time [Mr. Hoskins] had gave [sic] Mr. Sapp the pills to come give [Mr. Featherstone]. When [Mr. Sapp] gave [Mr. Featherstone] the pills, [Mr. Featherstone] started whispering to him that the money was short. [Mr.] Sapp said, "Don't worry about it, he can't count anyways." ... [Mr.] Sapp went and gave Mr. Hoskins his money.
And at that time I believe [Mr.] Sapp actually told Mr. Hoskins that we had shorted him. Mr. Hoskins came out of the side booth demanding the rest of his money. When he started demanding the rest of his money, he got in between me and [Mr. Featherstone]. And at that point in time he started pointing his fingers in my face, and I hit him with a closed fist. And we started fighting. When we started fighting, [Mr. Featherstone] jumped into the fight and we started beating ... Mr. Hoskins until [Mr.] Sapp ran out of the building, because Mr. Hoskins had told him to go get a gun.
Defendant testified he never had possession of a gun, let alone Mr. Sapp's gun, during the altercation.
Defendant also testified that he and Mr. Featherstone met Mr. Sapp in a McDonald's parking lot later in the evening of 1 October 2012, where Mr. Featherstone gave Mr. Sapp a "cut" of the oxycodone pills acquired from Mr. Hoskins. Defendant further testified that Mr. Sapp also gave the gun to Mr. Featherstone and asked him to hold onto it because Mr. Sapp "was scared due to the fact" that, during an investigation into the incident at the studio that evening, "he had gave [sic] the detectives and Mr. Hoskins a story about [how] he couldn't locate his gun[.]" Defendant testified he did not know what Mr. Featherstone did with the gun afterwards.
Defendant was indicted for conspiracy to commit robbery with a dangerous weapon, robbery with a dangerous weapon, possession of a firearm by a felon, and being an habitual felon.[1] Defendant's indictment for possession of a firearm by a felon stated only that, on the evening of 1 October 2012, Defendant "did have in [his] control a black handgun, which is a firearm" and that Defendant "has previously been convicted of [a] felony[.]" However, at trial, and without objection by Defendant, the trial court instructed the jury, in part, as follows:
For a person to be guilty of a crime it is not necessary that he personally do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit the crime of robbery with a dangerous weapon and/or possession of a firearm by a felon,each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime [ ] but also guilty of any other crime committed by the other in pursuance of the common purpose to commit robbery with a dangerous weapon and/or possession of a firearm by a felon,or as a natural or probable consequence thereof.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date [ ][D]efendant acting either by himself or acting together [with] [Mr.] Featherstone with a common purpose to commit the crime of robbery with a dangerous weapon and/or possession of a firearm by a felon,each of them if actually or constructively present, is guilty of robbery with a dangerous weapon and/or possession of a firearm by felon.(emphasis added). When the trial court instructed the jury on the specific charge of possession of a firearm by a felon, it stated only that:
[D]efendant has been charged with possessing a firearm after having been convicted of a felony. For you to find [ ][D]efendant guilty of this offense, the State must prove two things beyond a reasonable doubt.
First, that on April 20, 2006, in the Superior Court Criminal Session of Transylvania County [ ] [D]efendantwas convicted by pleading guilty to the felony of possession with the intent to sell and deliver cocaine that was committed on October 26, 2005, in violation of the laws of the State of North Carolina.
And second, that thereafter [ ] [D]efendantpossessed a firearm.
If you find from the evidence beyond a reasonable doubt that [ ] [D]efendantwas convicted of a felony in the Superior Court of Transylvania County, State of North Carolina, on April 10, 2006, and that [ ] [D]efendantthereafter possessed a firearm, it would be your duty to return a verdict of guilty.
If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
(emphasis added).
During jury deliberations, the jury sent the trial court a note and asked: "Is constructive possession inclusive to a firearm or is a firearm not the same as articles from a robbery?" With approval from both the State and Defendant, the trial court responded to the jury in open court: "[The] actual-constructive possession jury instruction pertains exclusively to the firearm in this matter. It does not refer to any type of articles from a robbery."
The jury found Defendant guilty of possession of a firearm by a felon and being an habitual felon but not guilty of conspiracy or robbery with a dangerous weapon. The verdict sheet for the charge of possession of a firearm by a felon did not indicate whether the jury convicted Defendant under the theory of actual possession of the gun by Defendant or under the theory of acting in concert with Mr. Featherstone to possess the gun. Defendant appeals.
II. Analysis
Defendant contends that the trial court committed plain error by providing the jury with an instruction on acting in concert with respect to the charge of possession of a firearm by a felon. Specifically, Defendant argues that this instruction impermissibly allowed the jury to convict Defendant of possession of a firearm by a felon based on Mr. Featherstone-also a convicted felon-reportedly receiving the gun from Mr. Sapp in a McDonald's parking lot on the evening of 1 October 2012.
"[T]he North Carolina plain error standard of review ... requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error." State v. Lawrence,365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]
Id.at 518, 723 S.E.2d at 334 (citations and quotation marks omitted).
Defendant has not established plain error in the present case, even assuming arguendothat the trial court erred by instructing the jury on an acting in concert theory for the charge of possession of a firearm by a convicted felon. See State v. Diaz,155 N.C.App. 307, 314, 575 S.E.2d 523, 528 (2002) ("The acting in concert theory is not generally applicable to possession offenses [.]"). As a preliminary matter, Defendant concedes in his brief before this Court that the evidence elicited by Mr. Hoskins' testimony at trial "was legally sufficient for [the] jury to find [Defendant] guilty of possession of a firearm by a convicted felon[.]" Although Defendant maintains that the trial court nonetheless committed reversible error on the ground that "the plain error prejudice standard is not [based on] insufficiency of the evidence," our review of the "entire record" on an appeal for plain error necessarily requires that we examine Defendant's argument in the context of the evidence presented to the jury. Lawrence,365 N.C. at 518, 723 S.E.2d at 334.
Moreover, we note that the alleged gun transaction in the McDonald's parking lot was raised by Defendant at trial, not by the State. The State's case against Defendant rested almost entirely on the testimony of Mr. Hoskins that Defendant was in actual possession of Mr. Sapp's gun during the incident at the studio on 1 October 2012. Even though the jury did not believe, beyond a reasonable doubt, that Defendant robbed Mr. Hoskins at the studio, both Defendant and Mr. Hoskins testified that they engaged in a physical altercation. The jury reasonably could have believed that Defendant was in possession of Mr. Sapp's gun at that time.
Finally, Defendant has not presented this Court with any arguments under State v. Pakulski,319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987), which held that a trial court commits plain error when it instructs a jury on disjunctive theories of a crime, where one of the theories is improper, and "we cannot discern from the record the theory upon which the jury relied[.]" "It is not the role of the appellate courts ... to create an appeal for an appellant." Viar v. N.C. Dep't of Transp.,359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Therefore, Defendant has not met his "burden" of establishing that the trial court committed plain error in the present case. See Lawrence,365 N.C. at 516, 723 S .E.2d at 333.
NO PLAIN ERROR.
Judges HUNTER, JR. and DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by Defendant from judgment entered 5 February 2014 by Judge Marvin P. Pope, Jr. in Superior Court, Transylvania County. Heard in the Court of Appeals 20 April 2015.

Defendant previously was convicted of several felony drug possession offenses.