ZACHARY, Judge.
 

 *127
 
 The State appeals from the trial court's order granting defendant Jeffrey Tryon Collington's Motion for Appropriate Relief for
 
 *878
 
 ineffective assistance of counsel. For the reasons explained herein, we affirm.
 
 *128
 

 Background
 

 The present appeal arises from defendant's initial appeal to this Court ("
 
 Collington I
 
 ") in which we issued an opinion dismissing defendant's challenge to his conviction of possession of a firearm by a felon. As explained in
 
 Collington I
 
 , the underlying facts of the case are as follows:
 

 ... Christopher Hoskins ("Mr. Hoskins") testified for the State at trial as follows: Mr. Hoskins went to the recording studio ("the studio") of Dade Sapp ("Mr. Sapp") to "hang out" on the evening of 1 October 2012. Shortly after he arrived, two men-identified by Mr. Hoskins as Defendant and Clarence Featherstone [ ("Defendant's brother") ]-entered the studio, passed by Mr. Sapp, and demanded to speak with someone named "Tony." Defendant asked Mr. Hoskins if he was "Tony" and pointed a gun ("the gun") at Mr. H[o]skins when he said he was not "Tony." A struggle for the gun ensued. According to Mr. Hoskins, both Defendant and [Defendant's brother] beat him up, went through his pockets, removed approximately $900.00 in cash that Mr. Hoskins had won in video poker earlier in the day, and then left the studio. At trial, Mr. Hoskins also identified the gun that reportedly was wielded by Defendant as belonging to Mr. Sapp.
 

 Defendant testified that he and [his brother] did go to the studio on the evening of 1 October 2012. However, Defendant maintained that they went to the studio for [Defendant's brother] to purchase a large quantity of oxycodone from Mr. Hoskins. According to Defendant,
 

 Sapp set up the drug deal by calling Mr. Hoskins on the cellphone and asking him to come to the studio. Hoskins said ... he would be there in about three minutes.
 

 When Mr. Hoskins came into the studio he was wearing a hoody. You could not see his face. He walked straight back past us and made a left in the side booth which was a soundproof booth used for a studio, and Sapp walked in behind him.
 

 During that time Mr. Hoskins had gave Mr. Sapp the pills to come give [my brother]. When Mr. Sapp gave [my brother] the pills, [my brother]
 

 *129
 
 started whispering to him that the money was short. Mr. Sapp said, "Don't worry about it, he can't count anyways." Mr. Sapp went and gave Mr. Hoskins his money.
 

 And at that time I believe Mr. Sapp actually told Mr. Hoskins that we had shorted him. Mr. Hoskins came out of the side booth demanding the rest of his money. When he started demanding the rest of his money, he got in between me and [my brother]. And at that point in time he started pointing his fingers in my face, and I hit him with a closed fist. And we started fighting. When we started fighting, [my brother] jumped into the fight and we started beating ... Mr. Hoskins until Mr. Sapp ran out of the building, because Mr. Hoskins had told him to go get a gun.
 

 Defendant testified he never had possession of a gun, let alone Mr. Sapp's gun, during the altercation.
 

 Defendant also testified that he and [his brother] met Mr. Sapp in a McDonald's parking lot later in the evening of 1 October 2012, where [Defendant's brother] gave Mr. Sapp a "cut" of the oxycodone pills acquired from Mr. Hoskins. Defendant further testified that Mr. Sapp also gave the gun to [Defendant's brother] and asked him to hold onto it because Mr. Sapp "was scared due to the fact" that, during an investigation into the incident at the studio that evening, "he had gave the detectives and Mr. Hoskins a story about how he couldn't locate his gun." Defendant testified he did not know what [his brother] did with the gun afterwards.
 

 Defendant was indicted for conspiracy to commit robbery with a dangerous weapon, robbery with a dangerous weapon, possession of a firearm by a felon, and being an habitual felon. Defendant's indictment for possession of a firearm by a felon stated only that, on the evening of 1 October 2012, Defendant "did have in his control a black handgun, which is a firearm" and that Defendant "has previously been convicted
 
 *879
 
 of a felony." However, at trial, and without objection by Defendant, the trial court instructed the jury, in part, as follows:
 
 *130
 
 For a person to be guilty of a crime it is not necessary that he personally do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit the crime of robbery with a dangerous weapon and/or
 
 possession of a firearm by a felon
 
 , each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime but also guilty of any other crime committed by the other in pursuance of the common purpose to commit robbery with a dangerous weapon and/or
 
 possession of a firearm by a felon
 
 , or as a natural or probable consequence thereof.
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date Defendant acting either by himself or acting together with [Defendant's brother] with a common purpose to commit the crime of robbery with a dangerous weapon and/or
 
 possession of a firearm by a felon
 
 , each of them if actually or constructively present, is guilty of robbery with a dangerous weapon and/or
 
 possession of a firearm by felon
 
 .
 

 (emphasis added).
 

 State v. Collington
 
 ,
 
 242 N.C.App. 252
 
 ,
 
 2015 WL 4081786
 
 *2, 2015 N.C. App. LEXIS 534 *1-7,
 
 disc. review denied
 
 ,
 
 368 N.C. 357
 
 ,
 
 776 S.E.2d 855
 
 (2015) (alterations omitted).
 

 The jury found defendant not guilty of conspiracy or robbery with a dangerous weapon, but did find him guilty of possession of a firearm by a felon. However, the verdict sheet did not indicate whether the jury convicted defendant of possession of a firearm by a felon under the theory of actual possession of the firearm by defendant or under the theory of acting in concert with his brother to possess the firearm.
 

 Defendant appealed his conviction of possession of a firearm by a felon to this Court, arguing "that the trial court committed plain error by providing the jury with an instruction on acting in concert with respect to the charge of possession of a firearm by a felon."
 
 Id.
 
 at *3, 2015 N.C. App. LEXIS 534 at *7. Defendant specifically argued "that this instruction impermissibly allowed the jury to convict Defendant of possession of a firearm by a felon based on [his brother]-also a convicted felon-reportedly receiving the gun from Mr. Sapp in a McDonald's parking lot on the evening of 1 October 2012."
 
 Id.
 

 *131
 
 In
 
 Collington I
 
 , this Court held that, "even assuming
 
 arguendo
 
 that the trial court erred by instructing the jury on an acting in concert theory[,]" "Defendant has not established plain error[.]"
 
 Id.
 
 at *3, 2015 N.C. App. LEXIS 534 at *8. Based on the victim's testimony at trial and the fact that "both Defendant and [the victim] testified that they engaged in a physical altercation[,]" "[t]he jury reasonably could have believed that Defendant was in possession of Mr. Sapp's gun at that time."
 
 Id.
 
 at *4, 2015 N.C. App. LEXIS 534 at *9. This Court continued:
 

 Finally, Defendant has not presented this Court with any arguments under
 
 State v. Pakulski
 
 ,
 
 319 N.C. 562
 
 , 574,
 
 356 S.E.2d 319
 
 , 326 (1987), which held that a trial court commits plain error when it instructs a jury on disjunctive theories of a crime, where one of the theories is improper, and "we cannot discern from the record the theory upon which the jury relied." "It is not the role of the appellate courts to create an appeal for an appellant."
 
 Viar v. N.C. Dep't of Transp.
 
 ,
 
 359 N.C. 400
 
 , 402,
 
 610 S.E.2d 360
 
 , 361 (2005). Therefore, Defendant has not met his "burden" of establishing that the trial court committed plain error in the present case.
 
 See
 
 [
 
 State v.
 
 ]
 
 Lawrence
 
 , 365 N.C. [506,] 516, 723 S.E.2d [326,] 333 [ (2012) ].
 

 Id.
 
 at *4, 2015 N.C. App. LEXIS 534 at *9-10 (alterations omitted).
 

 Defendant filed a Motion for Appropriate Relief in the Transylvania County Superior Court, seeking a new trial on the grounds that he received ineffective assistance of appellate counsel in that "appellate counsel failed to raise the argument on appeal that plain error was committed because the trial court instructed the jury on disjunctive theories of a crime, one of which was improper,
 
 *880
 
 and the record does not show upon which theory the jury relied."
 

 The Honorable Mark E. Powell denied defendant's Motion for Appropriate Relief. Judge Powell reasoned:
 

 Taking into consideration that the Court of Appeals found that no plain error was established in the trial of the Defendant, even assuming that an acting in concert instruction was improper, the undersigned judge finds that no actual prejudice has been shown by the failure of the Defendant's appellate counsel to argue
 
 Pakulski
 
 , and that failure now to consider said argument will not result in a fundamental miscarriage of justice.
 

 Defendant petitioned for issuance of a writ of certiorari in this Court seeking review of the trial court's denial of his Motion for Appropriate
 
 *132
 
 Relief. On 29 December 2016, this Court granted defendant's petition for writ of certiorari and entered the following order:
 

 It appearing that the trial court utilized the incorrect legal standard in assessing defendant's ineffective assistance of appellate counsel claim,
 
 see
 

 State v. Simpson
 
 ,
 
 176 N.C. App. 719
 
 ,
 
 627 S.E.2d 271
 
 (2006), and it further appearing that this Court's decision in [
 
 Collington I
 
 ] did not hold that defendant's claim of plain error was meritless irrespective of whether his appellate counsel raised any arguments under [
 
 Pakulski
 
 ], the order of Judge [Powell] is hereby vacated and the matter remanded for the trial court to enter an appropriate dispositional order pursuant to N.C. Gen. Stat. [§] 15A-1420(c)(7) (2015).
 

 Upon remand, Judge Powell concluded that defendant received ineffective assistance of appellate counsel and granted defendant's Motion for Appropriate Relief, vacated defendant's conviction, and ordered a new trial. The trial court made the following conclusions of law:
 

 ...
 

 (4) A reasonable attorney would have been aware of
 
 Pakulski
 
 , its application to Defendant's case, and the remedy of a new trial that it would provide.
 

 (5) Appellate counsel's performance fell below an objective standard of professional reasonableness. While appellate counsel did argue that the instruction on acting in concert was invalid, he did not complete the argument by arguing that because disjunctive jury instructions were given, one of which was improper, and there was no finding as to the jury's chosen theory, there was plain error under
 
 Pakulski
 
 and Defendant is entitled to a new trial.
 

 (6) But for appellate counsel's error, there is a reasonable probability that the Court of Appeals would have found plain error and granted Defendant a new trial.
 

 (7) Defendant received ineffective assistance of counsel in violation of the Sixth Amendment.
 

 The State filed its Petition for Writ of Certiorari and Petition for a Writ of Supersedeas and Motion for Temporary Stay in this Court, which we allowed.
 

 *133
 

 Standard of Review
 

 On review from a trial court's ruling on a Motion for Appropriate Relief, the trial court's findings of fact "are binding if they are supported by any competent evidence[.]"
 
 State v. Pait
 
 ,
 
 81 N.C. App. 286
 
 , 288,
 
 343 S.E.2d 573
 
 , 575 (1986) (citing
 
 State v. Stevens
 
 ,
 
 305 N.C. 712
 
 ,
 
 291 S.E.2d 585
 
 (1982) ). "[T]he trial court's ruling on facts so supported may be disturbed only when there has been a manifest abuse of discretion ... or when it is based on an error of law."
 
 Id.
 
 at 288-89,
 
 343 S.E.2d at 575
 
 (citations omitted).
 

 Discussion
 

 The State argues that the trial court's conclusion that defendant received ineffective assistance of appellate counsel was based on an error of law. The State maintains that "[a]lthough defendant has altered his argument in that he now cites to
 
 Pakulski
 
 ... rather than to
 
 Lawrence
 
 ... for the argument that there was plain error in the instruction of acting in concert, the result is the same; he is not entitled to relief and there is no plain error." Accordingly, the State argues that the trial court erred in granting defendant's Motion for Appropriate Relief and ordering a new trial.
 

 *881
 
 In assessing the propriety of the trial court's grant of defendant's Motion for Appropriate Relief for ineffective assistance of counsel, we first find it necessary to examine the law at the center of the present dispute.
 

 I.
 
 State v. Pakulski
 

 A.
 

 Where a defendant alleges on appeal that the trial court erred in some respect during his trial, but did not make the appropriate objection at trial, the defendant is limited to a plain error review of the issue.
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983). "Generally speaking, the [plain error] rule provides that a criminal defendant is entitled to a new trial if the defendant demonstrates that the jury
 
 probably
 
 would have returned a different verdict had the error not occurred."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 507,
 
 723 S.E.2d 326
 
 , 327 (2012) (emphasis added) (citing
 
 State v. Walker
 
 ,
 
 316 N.C. 33
 
 , 39,
 
 340 S.E.2d 80
 
 , 83 (1986) ). "[P]lain error review ... is normally limited to instructional and evidentiary error."
 
 Id.
 
 at 516,
 
 723 S.E.2d at
 
 333 (citing
 
 State v. Wiley
 
 ,
 
 355 N.C. 592
 
 , 615,
 
 565 S.E.2d 22
 
 , 39-40 (2002),
 
 cert. denied
 
 ,
 
 537 U.S. 1117
 
 ,
 
 123 S.Ct. 882
 
 ,
 
 154 L.Ed. 2d 795
 
 (2003) ).
 

 *134
 
 To be entitled to a new trial under plain error review, the defendant must establish
 

 that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (citations, quotation marks, and brackets omitted). In the context of improper jury instructions, the plain error analysis typically involves an examination of the evidence to determine whether the jury would have probably returned a different verdict had it been instructed properly.
 
 See e.g.
 
 ,
 
 id.
 
 at 519,
 
 723 S.E.2d at 334-35
 
 . Where there was overwhelming evidence presented at trial to support the defendant's conviction despite the improper jury instruction, plain error is unlikely to be established and the defendant will not be entitled to a new trial.
 
 See e.g.
 
 ,
 
 id.
 
 at 516,
 
 723 S.E.2d at
 
 333 (citing
 
 United States v. Cotton
 
 ,
 
 535 U.S. 625
 
 ,
 
 122 S.Ct. 1781
 
 ,
 
 152 L.Ed. 2d 860
 
 (2002) ).
 

 In
 
 State v. Pakulski
 
 , our Supreme Court established the proper application of the plain error standard of review where the jury received an improper alternative jury instruction:
 

 Where the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead,
 
 we resolve the ambiguity in favor of the defendant
 
 .
 

 State v. Pakulski
 
 ,
 
 319 N.C. 562
 
 , 574,
 
 356 S.E.2d 319
 
 , 326 (1987) (citation omitted) (emphasis added). In such a case, plain error will be found because "we must assume the jury based its verdict on the theory for which it received an improper instruction."
 
 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 , 193,
 
 432 S.E.2d 832
 
 , 846 (1993) (citations omitted);
 
 see also
 

 State v. Martinez
 
 , --- N.C. App. ----, ----,
 
 801 S.E.2d 356
 
 , 360 (2017).
 

 Pakulski
 
 does not, however, stand for the proposition that a new trial is mandated
 
 any
 
 time an improper alternative instruction is given.
 

 *135
 
 Plain error requires that the defendant establish that the instructional error "had a probable impact on the jury's finding that the defendant was guilty."
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 333
 
 (citation and quotation marks omitted). If one of the alternative theories of conviction submitted to the jury is proper but the other improper, and the verdict sheet does not indicate the theory upon which the jury relied, it may still be apparent from the record upon which instruction the jury relied. If it is apparent from the record that the jury did not convict the defendant based upon the improper instruction, it would contravene the
 
 *882
 
 purpose of the plain error rule for the reviewing court to nevertheless assume that the jury relied upon the improper instruction and mandate a new trial.
 
 See
 

 Henderson v. Kibbe
 
 ,
 
 431 U.S. 145
 
 , 154,
 
 97 S.Ct. 1730
 
 , 1736,
 
 52 L.Ed. 2d 203
 
 , 212 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.");
 
 Lawrence
 
 ,
 
 365 N.C. at 517
 
 ,
 
 723 S.E.2d at 333
 
 ("The adoption of the 'plain error' rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial."). Plain error review in the context of improper disjunctive jury instructions will in large part turn on an analysis of the probability that the jury relied upon the improper instruction as opposed to the proper instruction.
 

 In certain circumstances, it may be clear that the jury did not rely upon the improper instruction. For instance, if there was ample evidence presented at trial to support the proper alternative theory of conviction, and the State presented no evidence at trial that would have supported the improper alternative theory, then the reviewing court may find it probable that the jury relied upon the proper instruction rather than the improper instruction that was wholly unsupported by the evidence at trial.
 
 See e.g.
 
 ,
 
 State v. Boyd
 
 ,
 
 222 N.C. App. 160
 
 , 170-73,
 
 730 S.E.2d 193
 
 , 199-201 (2012) (Judge Stroud dissenting),
 
 reversed
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013) (reversing for the reasons stated in Judge Stroud's dissent);
 
 Martinez
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 360
 
 . In such a case, the reviewing court need not assume that the jury relied upon the improper instruction and order a new trial.
 
 Martinez
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 361
 
 ("[A] reviewing court is to determine whether a disjunctive jury instruction constituted reversible error, without being required in every case to assume that the jury relied on the inappropriate theory."). Instead, the reviewing court may apply the usual plain error standard of review to determine whether the evidence at trial was sufficient to support a conviction under the proper instruction.
 
 See
 

 Lawrence
 
 ,
 
 365 N.C. at 516
 
 ,
 
 723 S.E.2d at 333
 
 ("The [plain error] standard ... is unlikely to be satisfied, however, when evidence of the defendant's
 
 *136
 
 guilt is overwhelming.");
 
 Martinez
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 361
 
 ("[Rather than] assuming that the jury relied on the [improper] theory ..., [the Court] cited the overwhelming evidence supporting the
 
 other
 
 kidnapping theories ... to conclude that the defendant failed to show that, absent the error, the jury would have returned a different verdict.") (discussing
 
 State v. Boyd
 
 ,
 
 222 N.C. App. 160
 
 , 173,
 
 730 S.E.2d 193
 
 , 201 (2012) ) (citation, quotation marks, and alteration omitted).
 

 In contrast, there may occasionally arise the uncommon case in which the verdict sheet fails to reveal whether the jury relied upon the proper instruction or the improper instruction, and the reviewing court cannot discern from the evidence in the record upon which of the two theories the jury relied.
 
 Pakulski
 
 ,
 
 319 N.C. at 574
 
 ,
 
 356 S.E.2d at 326
 
 . Where one of the alternative instructions was improper and the State presented substantial evidence that would support a finding of guilt under either the improper or the proper instruction, it would "seriously affect the fairness, integrity or public reputation of" the appellate process for the court to assume that the jury premised its verdict on the proper instruction.
 
 Odom
 
 ,
 
 307 N.C. at 660
 
 ,
 
 300 S.E.2d at 378
 
 . Rather, such a case falls precisely within the category of " 'rare case[s] in which an improper instruction will justify reversal of a criminal conviction[.]' "
 
 Id.
 
 at 661,
 
 300 S.E.2d at 378
 
 (quoting
 
 Henderson
 
 ,
 
 431 U.S. at 154
 
 ,
 
 97 S.Ct. at 1736
 
 ,
 
 52 L.Ed. 2d at
 
 212 ). Accordingly,
 
 Pakulski
 
 and the consequent cases provide that the tie must be broken in the defendant's favor, with the result that the defendant's conviction is vacated and a new trial is ordered.
 

 B.
 

 In the instant case, the trial court instructed the jury on alternative theories under which the jury could find defendant guilty of possession of a firearm by a felon. The first was that he could be guilty by a showing of actual or constructive possession of the firearm. This instruction was correct.
 

 *883
 

 State v. Young
 
 ,
 
 190 N.C. App. 458
 
 , 460,
 
 660 S.E.2d 574
 
 , 576 (2008). The trial court also instructed the jury that it could find defendant guilty if he acted in concert with his brother in the commission of the crime of possession of a firearm by his brother, a convicted felon. Defendant argued that this instruction was improper in
 
 Collington I
 
 .
 

 It is impossible to determine from the record upon which of the two alternative instructions the jury relied in finding defendant guilty of possession of a firearm by a felon. Under the first alternative, defendant could be found guilty if the jury believed him to have been in actual or constructive possession of the firearm while being a convicted felon. There was conflicting evidence on this issue at trial. Hoskins testified
 
 *137
 
 that defendant held a gun to his head, but defendant testified that the altercation arose only after Hoskins confronted defendant and his brother for having shorted Hoskins in the drug deal. According to defendant, it was then that Hoskins and defendant began fighting. Defendant testified that:
 

 Sapp had set the whole deal up, and he had tried to cross us all up. He had taken warrants out on us for robbing his studio, when he had set up this whole ordeal ... He told the cops that we came in and robbed his studio. But that's not what happened. He set up a drug deal and got half of the pills that were purchased, or at least somewhere near ... I did admit that I got in a physical altercation after he tried to retaliate for the rest of the money. I do admit that.
 

 Although defendant testified that at no point did he have a firearm during this encounter, Hoskins's testimony to the contrary would have been sufficient to justify defendant's conviction under the first alternative theory of actual or constructive possession.
 

 The evidence presented at trial was also sufficient to support a finding of guilt under the alternative theory of acting in concert. At the close of the evidence, the jury was instructed that:
 

 [i]f you find from the evidence beyond a reasonable doubt that ... defendant ... acting together [with his brother] with a common purpose to commit the crime of ... possession of a firearm by a felon, each of them if actually or constructively present, is guilty of ... possession of a firearm by a felon.
 

 Defendant testified that he never had possession of a firearm. Rather, defendant testified that:
 

 [l]ater that night ... Sapp did meet me and my brother ... and handed him a Glock pistol to hold for him, because he said he was scared due to the fact he had gave the detectives and [Hoskins] a story about he couldn't locate his gun. But [Hoskins] knew he had the gun, and so did the cops.
 

 Given that evidence was admitted that Sapp handed defendant's brother the gun in front of defendant, and that defendant's brother was also a convicted felon, this admission would have been sufficient for the jury to find defendant guilty of possession of a firearm by a felon under a
 
 *138
 
 theory of acting in concert, and
 
 not
 
 under a theory of actual or constructive possession.
 

 The presence of conflicting evidence at trial sufficient to support either of the alternative instructions, along with the jury's verdict in favor of defendant on the related charges, would have rendered this Court unable to determine under which of the two theories defendant was convicted. Therefore, under
 
 Pakulski
 
 , if this Court in
 
 Collington I
 
 were to have determined that the instruction for the crime of possession of a firearm by a felon under the theory of acting in concert was improper, then defendant would have been entitled to a new trial.
 

 However, on appeal, defendant's appellate counsel did not cite
 
 Pakulski
 
 or other consequent cases, or argue that because it could not be determined from the record whether the jury relied upon the improper or the proper instruction, plain error was established. Rather, appellate counsel proceeded to discount the evidence that would have supported the proper instruction on actual or constructive possession.
 

 Where a defendant's appellate counsel fails to raise an argument on appeal, that argument is deemed abandoned, as "[i]t is not the job of this Court to make [a] [d]efendant's
 
 *884
 
 argument for him."
 
 State v. Joiner
 
 ,
 
 237 N.C. App. 513
 
 , 522,
 
 767 S.E.2d 557
 
 , 563 (2014) (citing
 
 Viar v. North Carolina Dep't of Transp.
 
 ,
 
 359 N.C. 400
 
 , 402,
 
 610 S.E.2d 360
 
 , 361 (2005) ("It is not the role of the appellate courts, however, to create an appeal for an appellant.") ). This is the case even where the omitted argument may be dispositive of the defendant's appeal. Accordingly, in
 
 Collington I
 
 , this Court was left to determine whether "[t]he jury reasonably could have believed that Defendant was in [actual or constructive] possession of" a gun from the evidence presented, regardless of the impropriety of the acting in concert instruction.
 
 Collington
 
 ,
 
 2015 WL 4081786
 
 at *3, 2015 N.C. App. LEXIS at *9. Because we so concluded, we dismissed defendant's appeal.
 

 II. Defendant's Motion for Appropriate Relief
 

 In the case at bar, because defendant's appellate counsel neglected to raise the
 
 Pakulski
 
 case, which may have otherwise entitled defendant to a new trial, defendant sought to obtain a new trial by filing a Motion for Appropriate Relief in the trial court arguing that he received ineffective assistance of appellate counsel. The trial court agreed that defendant had received ineffective assistance in his appeal in
 
 Collington I
 
 and vacated defendant's conviction.
 

 The State argues on appeal that the trial court erred in finding that defendant received ineffective assistance of appellate counsel despite
 
 *139
 
 appellate counsel's failure to argue the holding in
 
 Pakulski
 
 . We disagree, and affirm the trial court's conclusion that appellate counsel's omission constituted ineffective assistance of counsel and that defendant is therefore entitled to a new trial.
 

 Ineffective Assistance of Counsel
 

 The right to counsel under Article I, Section 23 of the North Carolina Constitution and the Sixth Amendment to the United States Constitution "includes the right to the effective assistance of counsel."
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561,
 
 324 S.E.2d 241
 
 , 247 (1985) (citing
 
 McMann v. Richardson
 
 ,
 
 397 U.S. 759
 
 , 771,
 
 90 S.Ct. 1441
 
 , 1449,
 
 25 L.Ed. 2d 763
 
 , 773 (1970) ). This includes the right to effective assistance of
 
 appellate
 
 counsel.
 
 Evitts v. Lucey
 
 ,
 
 469 U.S. 387
 
 ,
 
 105 S.Ct. 830
 
 ,
 
 83 L.Ed. 2d 821
 
 (1985) ;
 
 See e.g.
 
 ,
 
 Smith v. Robbins
 
 ,
 
 528 U.S. 259
 
 , 285,
 
 120 S.Ct. 746
 
 , 764,
 
 145 L.Ed. 2d 756
 
 , 764 (2000).
 

 The burden is on the defendant to demonstrate that he received ineffective assistance of counsel "so ... as to require reversal of [his] conviction[.]"
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed. 2d 674
 
 , 693 (1984). In order to satisfy that burden, the defendant must establish both of the elements of the analysis of a claim of ineffective assistance of counsel:
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 Id.
 

 ;
 
 Braswell
 
 ,
 
 312 N.C. at 562
 
 ,
 
 324 S.E.2d at 248
 
 (adopting the test laid out in
 
 Strickland
 
 for purposes of the North Carolina Constitution). "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."
 

 Id.
 

 The same standard applies to claims of ineffective assistance of appellate counsel.
 
 State v. Simpson
 
 ,
 
 176 N.C. App. 719
 
 , 722,
 
 627 S.E.2d 271
 
 , 275,
 
 disc. review denied
 
 ,
 
 360 N.C. 653
 
 ,
 
 637 S.E.2d 191
 
 (2006) (citing
 
 Robbins
 
 ,
 
 528 U.S. at 285
 
 ,
 
 120 S.Ct. at 764
 
 ,
 
 145 L.Ed. 2d at
 
 780 ).
 

 The analysis of claims of ineffective assistance of counsel is guided by the underlying purpose of the requirement that defendants receive effective assistance of counsel, that is, "to ensure a fair trial[.]"
 

 *140
 

 Strickland
 
 ,
 
 466 U.S. at 686
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed. 2d at 692
 
 . "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result,"
 

 Id.
 

 at 686
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed. 2d at 692-93
 
 , or for purposes
 
 *885
 
 of appellate counsel, that the
 
 appeal
 
 cannot be relied upon as having produced a just result.
 
 Robbins
 
 ,
 
 528 U.S. at 285-86
 
 ,
 
 120 S.Ct. at 764-65
 
 ,
 
 145 L.Ed. 2d at 780
 
 .
 

 i. Deficient Performance
 

 The State argues that the trial court erred in finding that defendant received ineffective assistance of appellate counsel because defendant failed to establish the first prong of ineffectiveness claims,
 
 i.e.
 
 , that his appellate counsel's performance was in fact deficient. According to the State, not only has it never been held that it is improper to instruct the jury on acting in concert for the crime of possession of a firearm by a felon, but that even if there were such legal precedent, such a mistake on the part of appellate counsel was reasonable.
 

 The State's argument on this point is misplaced. The question is not whether appellate counsel's performance was deficient for failing to argue that the acting in concert instruction was improper. In fact, appellate counsel made that argument. The question is whether appellate counsel's performance was deficient for failing to support the argument that defendant was entitled to a new trial because of the improper instruction.
 

 To show "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]"
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed. 2d at 693
 
 , a defendant must establish "that his counsel's conduct fell below an objective standard of reasonableness."
 
 Braswell
 
 ,
 
 312 N.C. at 561-62
 
 ,
 
 324 S.E.2d at
 
 248 (citing
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed. 2d at
 
 693 ). In the appellate context, a claim of ineffective assistance of counsel requires a showing that the appellate representation did not fall "within the range of competence demanded of attorneys in [appellate] cases."
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed. 2d at 693
 
 (citation and quotation marks omitted).
 

 Generally, "the decision not to press [a] claim on appeal [is not] an error of such magnitude that it render[s] counsel's performance constitutionally deficient under the test of
 
 Strickland
 
 [.]"
 
 Smith v. Murray
 
 ,
 
 477 U.S. 527
 
 , 535,
 
 106 S.Ct. 2661
 
 , 2667,
 
 91 L.Ed. 2d 434
 
 , 445 (1986). There is a presumption that "the challenged action might be considered sound trial strategy."
 
 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed. 2d at 695
 
 (citation and quotation marks omitted). Nevertheless, the defendant may be able to establish
 
 *141
 
 "that his counsel was objectively unreasonable in failing to find arguable issues[,]" and in failing to raise, relevant supporting legal authority on appeal.
 
 See
 

 Robbins
 
 ,
 
 528 U.S. at 285
 
 ,
 
 120 S.Ct. at 764
 
 ,
 
 145 L.Ed. 2d at 780
 
 (internal citation omitted). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."
 
 Strickland
 
 ,
 
 466 U.S. at 688
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed. 2d at 694
 
 .
 

 We note that the instant case does not raise an issue of trial strategy. Appellate counsel's omission of the arguments under the
 
 Pakulski
 
 line of cases was not the result of a "conscious[ ] elect[ion] not to pursue that claim before [this] Court."
 
 Murray
 
 ,
 
 477 U.S. at 534
 
 ,
 
 106 S.Ct. at 2666
 
 ,
 
 91 L.Ed. 2d at 444
 
 . As explained
 
 supra,
 
 in the absence of citation to the principles set forth under the
 
 Pakulski
 
 cases, appellate counsel had the exceptional task of establishing that absent the improper instruction, the jury probably would have acquitted defendant, despite the fact that the evidence presented at trial was sufficient to support a finding of guilt under the proper instruction.
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 . However, had appellate counsel proffered the arguments under
 
 Pakulski
 
 , defendant would have secured a new trial upon simply demonstrating that the acting in concert instruction was given in error-plain error would be shown irrespective of the evidence admitted at trial in support of defendant's actual or constructive possession of a firearm.
 

 The task at hand is to examine appellate counsel's "duty to bring to bear such skill and knowledge as will render the [appeal] a reliable adversarial testing process."
 
 Strickland
 
 ,
 
 466 U.S. at 688
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed. 2d at 694
 
 (citation omitted). Under the prevailing professional norms, we conclude that appellate counsel "was objectively unreasonable in failing to find" and raise the
 
 *886
 
 key legal principle that may have secured a new trial for defendant.
 
 Robbins
 
 ,
 
 528 U.S. at 285
 
 ,
 
 120 S.Ct. at 764
 
 ,
 
 145 L.Ed. 2d at 780
 
 .
 

 The record reveals that
 
 Pakulski
 
 has been cited in over fifty cases since 1987. Further, not only did appellate counsel fail to cite
 
 Pakulski
 
 or one of the many cases reiterating the principles enumerated therein
 
 [1]
 
 , but appellate counsel failed to raise the applicable doctrine governing improper alternative jury instructions. Appellate counsel simply argued that the theory of acting in concert is inapplicable to the crime of possession of a firearm by a felon, without proffering any supporting authority as to why such an error would require a new trial. Not
 
 *142
 
 only would effective assistance of counsel in this case require citation to either
 
 Pakulski
 
 or its related principles, but attorneys are on notice through well-settled case law that an argument not supported by authority is deemed abandoned.
 
 See e.g.
 
 ,
 
 State v. Lloyd
 
 ,
 
 354 N.C. 76
 
 , 87,
 
 552 S.E.2d 596
 
 , 607 (2001).
 

 Moreover, this is not a case where the implications of the omitted case law were uncertain at the time of defendant's appeal.
 
 See e.g.
 
 ,
 
 Simpson
 
 ,
 
 176 N.C. App. at 723
 
 ,
 
 627 S.E.2d at 275
 
 ("In light of the number of arguably reasonable jurists rejecting the notion that
 
 Apprendi
 
 and
 
 Ring
 
 had any effect on non-capital sentencing prior to
 
 Blakely
 
 , we hold that it was well within reason for Defendant's appellate counsel not to pursue this issue on appeal."). Appellate counsel's lack of professional diligence in uncovering the readily-available-and outcome determinative-legal principles enunciated in the
 
 Pakulski
 
 line of cases was so unreasonable as to constitute ineffective assistance of counsel. Such attorney diligence is needed in order "to justify the law's presumption that counsel will fulfill the role in the adversary process that the [Sixth] Amendment envisions."
 
 Strickland
 
 ,
 
 466 U.S. at 688
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed. 2d at 693
 
 .
 

 Accordingly, the trial court did not err when it concluded that the performance of defendant's appellate counsel was deficient, and that defendant had satisfied the first prong of the analysis of defendant's claim that he received ineffective assistance of counsel.
 

 ii. Prejudice
 

 The State also argues that the trial court erred in concluding that defendant made a proper showing of prejudice so as to establish that he received ineffective assistance of appellate counsel. The State maintains that even if appellate counsel had cited
 
 Pakulski
 
 for the proposition that plain error had been established, this Court would have nevertheless been required to affirm defendant's conviction due to the evidence in support of the alternative instruction on actual or constructive possession. However, for the reasons explained in Section I, this argument is unpersuasive.
 
 Pakulski
 
 stands for the proposition that plain error is satisfied where an improper disjunctive jury instruction was given and the reviewing court is wholly unable to determine whether the jury rested its verdict upon the improper or the proper instruction. The appropriate inquiry is whether defendant was prejudiced by his appellate counsel's failure to argue plain error under the
 
 Pakulski
 
 principles.
 

 To prevail on a claim of ineffective assistance of counsel, the defendant must show not only that his counsel's performance was deficient, but also that he was prejudiced thereby.
 

 *143
 

 Strickland
 
 ,
 
 466 U.S. at 692
 
 ,
 
 104 S.Ct. at 2067
 
 ,
 
 80 L.Ed. 2d at 696
 
 . "The fact that counsel made an error, or even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings."
 
 Braswell
 
 ,
 
 312 N.C. at 563
 
 ,
 
 324 S.E.2d at 248
 
 (citation omitted). This analysis must be guided by the underlying purpose of the right to effective assistance of counsel,
 
 i.e.
 
 , "to ensure that a defendant has the assistance necessary to justify
 
 reliance
 
 on the outcome of the proceeding."
 

 *887
 

 Strickland
 
 ,
 
 466 U.S. at 691-92
 
 ,
 
 104 S.Ct. at 2067
 
 ,
 
 80 L.Ed. 2d at 696
 
 (emphasis added). "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."
 
 Strickland
 
 ,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. at 2068
 
 ,
 
 80 L.Ed. 2d at 698
 
 . Thus, for purposes of establishing prejudice, a "reasonable probability" that there would have been a different result simply means "a probability sufficient to undermine confidence in the outcome" of the appeal.
 
 Id
 
 .
 

 In the instant case, we agree with the trial court that defendant made a proper showing of prejudice. Reliance on the outcome in
 
 Collington I
 
 is sufficiently undermined by the fact that, due to counsel's errors, defendant was denied the opportunity to have his case decided on the merits.
 
 Cf.
 

 Evitts
 
 ,
 
 469 U.S. at 395
 
 ,
 
 105 S.Ct. at 836
 
 ,
 
 83 L.Ed. 2d at 829
 
 ("Because the right to counsel is so fundamental to a fair [appeal], the Constitution cannot tolerate [appeals] in which counsel, though present in name, is unable to assist the defendant to obtain a fair decision on the merits."). If appellate counsel had argued that plain error was established pursuant to
 
 Pakulski
 
 , this Court would not have disposed of defendant's appeal on the grounds that there was sufficient evidence to support a conviction under the actual or constructive possession theory of guilt, for which the jury received an instruction. Instead, this Court would have, under the direction of
 
 Pakulski,
 
 been required to examine the underlying merits of defendant's appeal in the first instance; that is, whether the jury instruction on acting in concert was in fact improper. Moreover, given the persuasiveness of defendant's argument that acting in concert is not an appropriate theory upon which to base a conviction of possession of a firearm by a felon, there is a reasonable probability that, had appellate counsel cited
 
 Pakulski
 
 , this Court would have concluded that defendant was entitled to a new trial.
 

 Accordingly, we conclude that defendant received ineffective assistance of appellate counsel, and affirm the trial court's order granting defendant's Motion for Appropriate Relief.
 

 *144
 

 Conclusion
 

 For the reasons explained herein, the trial court's order granting defendant's Motion for Appropriate Relief is
 

 AFFIRMED.
 

 Judges CALABRIA and ARROWOOD concur.
 

 [1]
 

 Among others, these cases include
 
 State v. Belton
 
 ,
 
 318 N.C. 141
 
 ,
 
 347 S.E.2d 755
 
 (1986) ;
 
 State v. Lynch
 
 ,
 
 327 N.C. 210
 
 ,
 
 393 S.E.2d 811
 
 (1990) ;
 
 State v. Gibson
 
 ,
 
 333 N.C. 29
 
 ,
 
 424 S.E.2d 95
 
 (1992) ;
 
 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 ,
 
 432 S.E.2d 832
 
 (1993) (citing
 
 Williams v. North Carolina
 
 ,
 
 317 U.S. 287
 
 ,
 
 63 S.Ct. 207
 
 ,
 
 87 L.Ed. 279
 
 (1942) ).