IN THE SUPREME COURT OF NORTH CAROLINA

No. 290PA15-2

Filed 25 September 2020

STATE OF NORTH CAROLINA

v.

JEFFREY TRYON COLLINGTON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 259 N.C. App. 127, 814 S.E.2d 874 (2018), affirming an order granting defendant's motion for appropriate relief entered on 3 April 2017 by Judge Mark E. Powell in Superior Court, Transylvania County. Heard in the Supreme Court on 18 November 2019.

*Joshua H. Stein, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State-appellant.*

*North Carolina Prisoner Legal Services, Inc., by Christopher J. Heaney, for defendant-appellee.*

BEASLEY, Chief Justice.

In this case, we must determine whether appellate counsel's failure to cite a particular case or line of cases amounted to constitutionally ineffective assistance of counsel. Because the facts present in the line of cases the Court of Appeals would have had appellate counsel cite are distinguishable from those of this case, that precedent does not govern the instant case and appellate counsel's failure to rely thereon is objectively reasonable.

## **Facts and Procedural History**

The State's primary witness, Christopher Hoskins, testified that he went to the recording studio of Dade Sapp to "hang out" on the evening of 1 October 2012. Shortly after his arrival, two men identified by Hoskins as defendant and Clarence Featherstone entered the studio and demanded to speak with someone named "Tony." Defendant asked Hoskins if he was Tony and pointed a gun at Hoskins when Hoskins answered that he was not. Hoskins testified that defendant and Featherstone beat him up, went through his pockets and removed approximately $900 in cash, and left the studio. At trial, Hoskins identified the gun that was reportedly wielded by defendant as belonging to Sapp.

Defendant's testimony differed greatly from that of Hoskins. Defendant testified that he and Featherstone went to the studio that evening but that the purpose of the visit was for Featherstone to purchase oxycodone from Hoskins. An argument ensued over the amount paid for the oxycodone, which resulted in a fistfight between Hoskins, defendant, and Featherstone. Defendant testified the following:

> Sapp had set the whole deal up, and he had tried to cross us all up. He had taken warrants out on us for robbing his studio, when he had set up this whole ordeal. . . . He told the cops that we came in and robbed his studio. But that's not what happened. He set up a drug deal and got half of the pills that were purchased, or at least somewhere near . . . I did admit that I got in a physical altercation after he tried to retaliate for the rest of his money.

Defendant also testified that he never possessed a gun during the altercation. Rather, defendant testified that later in the evening, he and Featherstone met Sapp in a McDonald's parking lot. There, Sapp gave the gun to Featherstone and asked him to hold onto it because according to defendant, Sapp "was scared due to the fact [that] he had gave the detectives and Mr. Hoskins a story about [how] he couldn't locate his gun." Defendant testified that he did not know what Featherstone did with the gun after the interaction.

Defendant was indicted for robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, possession of a firearm by a felon, and being a habitual felon. The indictment charging defendant with possession of a firearm by a felon stated that defendant "did have in [his] control a black handgun, which is a firearm" and that defendant had previously been convicted of a felony. Without objection by defendant, the trial court instructed the jury that

> [f]or a person to be guilty of a crime it is not necessary that he personally do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit the crime of robbery with a dangerous weapon and/or possession of a firearm by a felon, each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime but [is] also guilty of any other crime committed by the other in pursuance of the common purpose to commit robbery with a dangerous weapon and/or possession of a firearm by a felon, or as a natural or probable consequence thereof.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant acting either by himself or acting together [with]

. . . Featherstone with a common purpose to commit the crime of robbery with a dangerous weapon and/or possession of a firearm by a felon, each of them if actually or constructively present, is guilty of robbery with a dangerous weapon and/or possession of a firearm by [a] felon.

With respect to the specific charge of possession of a firearm by a felon, the trial court instructed the jury on the following:

The defendant has been charged with possessing a firearm after having been convicted of a felony. For you to find the defendant guilty of this offense, the State must prove two things beyond a reasonable doubt.

First, that on April 20, 2006, in the Superior Court Criminal Session of Transylvania County the defendant was convicted by pleading guilty to the felony of possession with the intent to sell and deliver cocaine that was committed on October 26, 2005, in violation of the laws of the State of North Carolina.

And second, that thereafter the defendant possessed a firearm.

If you find from the evidence beyond a reasonable doubt that the defendant was convicted of a felony in the Superior Court of Transylvania County, State of North Carolina, on April 10, 2006, and that the defendant thereafter possessed a firearm, it would be your duty to return a verdict of guilty.

If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

The jury found defendant guilty of possession of a firearm by a felon and being a habitual felon. He was not found guilty of robbery with a dangerous weapon and

conspiracy to commit robbery with a dangerous weapon. The verdict sheet did not indicate whether the jury convicted defendant of possession of a firearm by a felon under a theory of actual possession or under a theory of acting in concert. Defendant was sentenced to 86 to 115 months imprisonment.

Defendant appealed the conviction, contending that the trial court committed plain error by instructing the jury on the acting in concert theory with respect to the charge of possession of a firearm by a felon. Defendant specifically argued that the jury instruction impermissibly allowed the jury to convict him of possession of a firearm by a felon based on testimony that Featherstone received a gun from Sapp in the McDonald's parking lot. In a unanimous, unpublished decision, the Court of Appeals held that defendant had not established that the trial court committed plain error in instructing the jury on the acting in concert theory for the charge of possession of a firearm by a felon. *State v. Collington* (*Collington I*), No. COA14-1244, 2015 WL 4081786, at *4 (N.C. Ct. App. 2015) (unpublished). The Court of Appeals opined that although the jury did not believe that defendant robbed Hoskins, both defendant and Hoskins testified that they engaged in a physical altercation; therefore, the jury reasonably could have believed that defendant was in possession of Sapp's gun at the time. *Id.*

Finally, the Court of Appeals observed that defendant had not presented an argument under *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987), "which held that a trial court commits plain error when it instructs a jury on disjunctive theories

of a crime," one of which was erroneous, and it cannot be discerned from the record the theory upon which the jury relied. *Id.* Noting that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant," the Court of Appeals concluded that defendant had not sufficiently demonstrated plain error. *Id.* (first quoting *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005); then citing *State v. Lawrence,* 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012)). Defendant filed a petition for discretionary review, which this Court denied on 24 September 2015.

After the Court of Appeals' decision in *Collington I*, defendant filed a motion for appropriate relief in the trial court alleging ineffective assistance of appellate counsel. Specifically, defendant argued that had his appellate counsel made the proper argument under *Pakulski*, a reasonable probability exists that defendant would have received a new trial on appeal. The trial court denied defendant's motion for appropriate relief on 13 October 2016, stating that "the Court of Appeals found that no plain error was established in the trial . . . even assuming . . . an acting in concert instruction was improper." Defendant petitioned the Court of Appeals for writ of certiorari. The Court of Appeals entered an order allowing the petition for writ of certiorari, vacating the trial court's order denying defendant's motion for appropriate relief, and remanding the case to the trial court to enter an appropriate order. The Court of Appeals reasoned that "the trial court utilized the incorrect legal standard in assessing defendant's ineffective assistance of appellate counsel claim." On

remand, the trial court entered an order granting the motion for appropriate relief, vacating defendant's conviction, and awarding defendant a new trial. The State proceeded to file a motion in the Court of Appeals to temporarily stay the trial court's order, a petition for writ of supersedeas, and a petition for writ of certiorari seeking review of the trial court's order. On 2 May 2017, the Court of Appeals allowed the State's motion for a temporary stay. On 17 May 2017, the Court of Appeals allowed the State's petition for writ of certiorari and petition for writ of supersedeas. On 17 April 2018, in a unanimous, published decision, the Court of Appeals affirmed the trial court's order, holding that defendant's appellate counsel was constitutionally ineffective for failing to make arguments under *Pakulski*. *State v. Collington* (*Collington II*), 259 N.C. App. 127, 141, 814 S.E.2d 874, 885 (2018) ("[H]ad appellate counsel proffered the arguments under *Pakulski*, defendant would have secured a new trial upon simply demonstrating that the acting in concert instruction was given in error.") The State petitioned this Court for discretionary review, which we allowed on 5 December 2018.

## Discussion

This Court reviews opinions of the Court of Appeals for errors of law. *State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994). To prove ineffective assistance of counsel, a defendant must satisfy the following two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

> functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment. Second, the defendant must show
> that the deficient performance prejudiced the defense. This
> requires showing that counsel's error [was] so serious as to
> deprive the defendant of a fair trial, a trial whose result is
> reliable.

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (emphasis omitted)

(quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

The proper standard for effective attorney performance is that of objectively

reasonable assistance. *Id.* at 561–62, 324 S.E.2d at 248 ("When a defendant attacks

his conviction on the basis that counsel was ineffective, he must show that his

counsel's conduct fell below an objective standard of reasonableness."). The reviewing

court "must indulge a strong presumption that counsel's conduct falls within the

broad range of what is reasonable assistance," *State v. Fisher*, 318 N.C. 512, 532,

350 S.E.2d 334, 346 (1986), and "strive to 'eliminate the distorting effects of

hindsight,'" *State v. Augustine*, 359 N.C. 709, 719, 616 S.E.2d 515, 524 (2005)

(quoting *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065).

The Court of Appeals concluded that appellate counsel was ineffective for

failing to cite *Pakulski*. We disagree for two reasons. First, the opinion in *Pakulski*

employed a standard of review different from the standard of review applicable in the

instant case. Second, defendant's appellate counsel did, in fact, make the arguments

he should have made, albeit by reference to different authority.

The standard of review for alleged instructional errors depends on whether the

defendant preserved the error for appeal by raising an objection in the trial court.

N.C. R. App. P. 10(a)(1), (4). Where the defendant fails to preserve the issue, he faces

a greater burden on appeal. In *Lawrence,* the defendant was convicted of several

offenses, including conspiracy to commit robbery with a dangerous weapon. 365 N.C.

at 510, 723 S.E.2d at 329.

> [I]n its charge on conspiracy to commit robbery with a dangerous weapon, the trial court correctly instructed that robbery with a dangerous weapon is the taking of property from a person 'while using a firearm,' but erroneously omitted the element that the weapon must have been used to endanger or threaten the life of the victim.

*Id.* Because the defendant did not object to the jury instruction at trial, we applied

the plain error standard of review. *Id.* at 512, 723 S.E.2d at 330 ("Because the plain

error standard of review imposes a heavier burden on the defendant than the

harmless error standard, it is to the defendant's advantage to object at trial and

thereby preserve the error for harmless error review."). Under the more exacting

standard of plain error review, we concluded that despite the acknowledged

instructional error, the defendant had not met the burden of proving "that, after

examination of the entire record, the error 'had a probable impact on the jury's finding

that the defendant was guilty.' " *Id.* at 518, 723 S.E.2d at 334 (quoting *State v. Odom,*

307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

In this case, the Court of Appeals' decision appears to be based on a

misidentification of the standard of review applied in *Pakulski*. The confusion is

understandable. Admittedly, our opinion in *Pakulski* lacks clarity. The Court does not explicitly state which standard of review the Court applied. Nor does the Court explicitly state whether the defendant objected to the jury instructions at trial—the fact on which the identity of the applicable standard of review turns.

In *Pakulski,* the trial court instructed the jury on the felony-murder rule based on two predicate felonies, only one of which was legally supported by the evidence. *Pakulski*, 319 N.C. at 564, 356 S.E.2d at 321. The entirety of the discussion relevant to this issue is contained in a single, short section that reads, in relevant part, that

> [w]here the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant.

*Id.* at 574, 356 S.E.2d at 326.

Although we failed to explicitly state it in our opinion, it appears that we applied the harmless error standard of review in *Pakulski*. First, we noted that the State asked the Court to hold that the trial court's error was harmless. *Id.* at 574, 356 S.E.2d at 326 ("The State contends *that error in submitting the breaking or entering felony is harmless* because the jury could have based its verdict solely on the robbery felony." (Emphasis added.)). If we had believed at the time that the State had misidentified the standard of review, it seems reasonable to assume that we would

have noted that fact.[1]

This Court's failure to clearly state the standard of review in *Pakulski* has been rectified by subsequent decisions, which have made clear that the *Pakulski* rule applies when the issue is properly preserved on appeal. As such, the distinction between the standard of review to be applied to preserved issues and that which should be applied to unpreserved issues was born not in *Pakulski,* but in the case law

---

[1] In fact, we did note a misidentification of the standard of review applicable to a different issue in *Pakulski*, as follows:

> The State requests that we review this assignment of error under the plain error rule, inasmuch as the omission was not called to the court's attention prior to jury deliberations. However, based on our reading of the record, it appears that defense counsel complied with the spirit of [Rule 10(a)(4) of the North Carolina Rule of Appellate Procedure], which in pertinent part provides:
>
> > No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . . . An exception to the failure to give particular instructions to the jury . . . shall identify the omitted instruction . . . by setting out its substance immediately following the instructions given . . . .
>
> It is clear from the record that the defendant requested an instruction on impeaching a witness with a prior inconsistent statement. Therefore, our review consists of a determination of whether the court erred in failing to give the requested instruction and, if so, whether there is a reasonable possibility that had the error not been committed, a different result would have been reached.

*State v. Pakulski*, 319 N.C. 562, 574–75, 356 S.E.2d 319, 327 (1987) (second through fifth alterations in original) (quoting N.C. R. App. P. 10(a)(4)).

-11-

that followed. Secondly, in view of the fact that the defendants 'moved to dismiss on the grounds that there was insufficient evidence to permit the court to charge the jury on a theory of felony murder,' *Pakulski*, 319 N.C. at 571, 356 S.E.2d at 325, it is clear that the issue of the sufficiency of the evidence to support an instruction permitting the jury to find the defendants guilty of felony murder on any theory was brought to the trial court's attention in advance of the delivery of the trial court's jury instructions, thereby serving the purpose of the contemporaneous objection now required by N.C. R. App. P. 10(a)(2). In *State v. Maddux*, 371 N.C. 558, 563, 819 S.E.2d 367, 370 (2018), we reaffirmed that the plain error standard applies in cases involving unpreserved jury instruction issues. There, the trial court erroneously instructed the jury that the defendant could be found guilty either through a theory of individual guilt or a theory of aiding and abetting. The defendant did not object to the jury instructions at trial, and the jury convicted the defendant using a general verdict sheet. Thus, the record did not reflect whether the conviction was based on a theory of individual guilt or a theory of aiding and abetting. *Id.* at 562, 819 S.E.2d at 370. We concluded that the defendant had not met his burden of proving plain error, and we rejected defendant's argument that *Pakulski* should govern our decision.

> [D]efendant argues that we cannot uphold his conviction even though there is ample evidence of his individual guilt because we have held that reversible error occurs when a jury is presented with alternative theories of guilt when (1) one of the theories is not supported by the evidence, and (2) it is unclear upon which theory the jury convicted defendant. . . . *This rule, however, is not applicable to plain*

> *error cases, such as this one, in which the error complained of is not preserved.* As such, we need not address the substance of this argument.

*Id.* at 567 n.11, 819 S.E.2d at 373 n.11 (emphasis added).

In *State v. Malachi*, 371 N.C. 719, 821 S.E.2d 407 (2018), we again referred to *Pakulski* as a harmless error case. *See id.* at 733 n.5, 821 S.E.2d at 418 n.5 ("This Court did discuss the *harmless error* issue in *Pakulski*, in which the State sought a finding of non-prejudice on the grounds that 'the jury could have based its verdict solely on the robbery felony.' " (emphasis added) (quoting *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326)). We also made clear in *Malachi* that *Pakulski* did not create a rule of per se reversible error in all cases involving disjunctive jury instructions. *Id.* at 726, 821 S.E.2d at 413. Thus, neither the plain error standard of review nor the harmless error standard of review will automatically entitle a defendant to a new trial as a matter of law. *See also State v. Boyd*, 366 N.C. 548, 742 S.E.2d 798 (2013) (reversing a decision of the Court of Appeals on the basis of a dissent that concluded that the defendant had failed to establish that the trial court's decision to allow the jury to consider whether the defendant was guilty of second degree kidnaping on the basis of a theory not supported by the evidence did not constitute plain error given the existence of "overwhelming" evidence tending to support other theories of guilt). Rather, each case must be resolved under the appropriate standard of review.

Confusion over *Pakulski* notwithstanding, this Court's precedent

demonstrates that unpreserved issues related to jury instructions are reviewed under a plain error standard, while preserved issues are reviewed under a harmless error standard. *See, e.g.*, *State v. Mumma*, 372 N.C. 226, 241, 827 S.E.2d 288, 298 (2019) ("As a result of defendant's failure to object to the delivery of an 'aggressor' instruction to the jury before the trial court, defendant is only entitled to argue that the delivery of the 'aggressor' instruction constituted plain error."); *Malachi*, 371 N.C. at 719, 821 S.E.2d at 407 (holding that the trial court's error was subject to the harmless error standard of review where the defendant lodged an objection at trial); *State v. Juarez*, 369 N.C. 351, 357–58, 794 S.E.2d 293, 299 (2016) ("Because defendant did not object to the instruction as given at trial, we consider whether this instruction constitutes plain error."); *State v. Galaviz-Torres*, 368 N.C. 44, 772 S.E.2d 434 (2015) (applying the plain error standard of review where the defendant's trial counsel did not object to any of the trial court's instructions); *State v. Petersilie*, 334 N.C. 169, 432 S.E.2d 832 (1993) (applying the harmless error standard of review where the trial court, despite the defendant's objection, incorrectly instructed the jury regarding one of two possible theories upon which the defendant could be convicted).

The fundamental purpose of such a rule is to incentivize the parties to make timely objections so that the trial court may resolve the issue in real time. *State v. Walker,* 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (holding that the test for the plain error standard of review places a heavier burden upon the defendant because the defendant could have prevented any error by making a timely objection). However,

"[p]lain error review allows appellate courts to alleviate the potential harshness of preservation rules," *Lawrence*, 365 N.C. at 514, 723 S.E.2d at 332, by allowing appellate courts to "take notice of errors for which no objection or exception had been made when 'the errors [were] obvious, or if they otherwise seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings,'" *id.* at 515, 723 S.E.2d at 332 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S. Ct. 391, 392 (1936)). This distinction is codified in our Rules of Appellate Procedure and has been supported by decades of this Court's precedent. *See* N.C. R. App. P. 10(a)(4)[2] ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

> The purpose of [Rule 10(a)(4)] is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial. Indeed, even when the "plain error" rule is applied, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."

*Lawrence*, 365 N.C. at 517, 723 S.E.2d at 333 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736, 52 L. Ed. 2d 203, 212 (1977)). Considering the extensive

---

[2] Since this Court's holding in *Lawrence*, the Rules of Appellate Procedure have been revised such that Rule 10(b)(2) is now codified as Rule 10(a)(4) ("Plain Error").

precedent of this Court and the important interests promoted by clear rules related to issue preservation, we see no reason to create a subset of cases in which an unpreserved issue relating to jury instructions qualifies for harmless error review.

Here, defendant did not object at trial to the trial court's jury instructions. The issue, therefore, was not properly preserved for appeal and could be reviewed only for plain error. Because today the standard of review applied in *Pakulski* applies only to preserved issues, it would have had little precedential value in the instant case, and appellate counsel's failure to cite it was not objectively unreasonable.

Furthermore, appellate counsel's arguments were appropriate for plain error review. Appellate counsel argued that the trial court committed plain error by instructing the jury that defendant would be guilty if he had acted in concert to commit the offense of possession of a firearm by a felon. Quoting *Lawrence*, appellate counsel argued that "the plain error prejudice standard is not insufficiency of the evidence, but is whether 'the error had a probable impact on the jury verdict.'" Appellate counsel argued that the error did in fact have a probable impact on the jury's verdict by demonstrating the probability that the jury found defendant guilty merely for accompanying Featherstone when Featherstone acquired the firearm from Sapp. Ultimately, appellate counsel argued that the jury was presented with multiple theories of guilt, one of which was erroneous, and that the error "had a probable impact on the jury's finding that the defendant was guilty." *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. This was the appropriate argument and employed the

correct standard of review.

It is important to note that the underlying issue of whether the trial court committed reversible error is not before this Court. The issue brought before the Court is whether defendant's appellate counsel was ineffective for failing to cite to the *Pakulski* line of cases. We make no determination as to whether the trial court erred by instructing the jury on the acting in concert theory of guilt for the possession of a firearm by a felon charge, as that is not the issue before us. Our task today is merely to determine whether appellate counsel was constitutionally ineffective. Even assuming *arguendo* that the trial court committed plain error, we cannot fault appellate counsel for the Court of Appeals' failure to so hold.

Accordingly, we hold that defendant failed to prove that his appellate counsel's conduct "fell below an objective standard of reasonableness." *Braswell*, 312 N.C. at 561–62, 324 S.E.2d at 248.[3] We reverse the decision of the Court of Appeals to the contrary.

REVERSED.

---

[3] Because defendant fails to demonstrate the deficiency of appellate counsel's performance we need not and do not address the prejudice prong of the ineffective assistance of counsel analysis. *See State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985); *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 2069 (1984) ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

Justice ERVIN, concurring.

I agree with the Court's interpretation of our earlier decision in *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987), and the Court's determination that defendant has failed to demonstrate that the representation that he received from his appellate counsel "fell below an objective standard of reasonableness," *State v. Braswell*, 312 N.C. 553, 561–62, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)), in spite of the fact that defendant's appellate counsel did not cite *Pakulski* when defendant's appeal was initially decided by the Court of Appeals and join the Court's opinion for that reason. I am, however, concerned that the Court's opinion can be read to suggest that a defendant cannot, regardless of the state of the evidentiary record, be convicted of possession of a firearm by a felon based upon the theory of acting in concert and write separately in an attempt to make sure that our decision does not create any unnecessary confusion with respect to this issue.

In his initial appeal to the Court of Appeals, defendant contended that the trial court committed plain error by instructing the jury that it could convict defendant of possession of a firearm by a felon on the basis of the acting in concert doctrine. More specifically, defendant asserted that the trial court had committed plain error by "allow[ing] the jury to find [defendant] guilty of possession of a firearm by a convicted felon for Featherstone's possession of the Glock pistol which [defendant] testified Sapp handed to Featherstone at the McDonald's later that night after whatever had

occurred at the recording studio." In its initial, unpublished decision in this case, the Court of Appeals determined that, in light of defendant's concession that there was sufficient evidence to permit the jury to find defendant guilty of possession of a firearm by a convicted felon on the basis of actual or constructive possession, "[d]efendant has not established plain error in the present case, even assuming *arguendo* that the trial court erred by instructing the jury on an acting in concert theory for the charge of possession of a firearm by a convicted felon," *State v. Collington*, No. COA14-1244, 2015 WL 4081786, at *8 (July 7, 2015) (*Collington I*) (citing *State v. Diaz*, 155 N.C. App. 307, 314, 575 S.E.2d 523, 528 (2002)), while noting that "[d]efendant ha[d] not presented [that Court] with any arguments under *State v. Pakulski*, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987)." *Id*. at *9.

In the aftermath of the Court of Appeals' decision, defendant filed a motion for appropriate relief in which he alleged that he had received ineffective assistance of counsel on appeal. Defendant argued that, "[a]s a general rule, the acting in concert theory is not applicable to possession offenses," citing *Diaz*, 155 N.C. App. at 314–15, 575 S.E.2d at 528–29 (2002) (stating that "[t]he acting in concert theory is not generally applicable to possession offenses, as it tends to become confused with other theories of guilt"), and *State v. Baize*, 71 N.C. App. 521, 530, 323 S.E.2d 36, 42 (1984) (stating that "[w]e have found no acting in concert case in which the State was allowed to leap, in one single bound, the double hurdles of constructive presence *and* constructive possession"). In defendant's view, while "acting in concert may be

instructed properly in cases charging possession of contraband," citing *State v. Diaz*, 317 N.C. 545, 552, 346 S.E.2d 488, 493 (1986), "[f]irearms . . . are not contraband *per se*" and, since "possession of a firearm by a felon [includes] an element personal to defendant–his or her status as a convicted felon–that only the defendant can satisfy," "acting in concert is not a valid theory for the possession of a firearm by a felon charge." As a result, defendant argued that, "[l]ike *Pakulski*, the present case involves a situation where both valid and invalid instructions were presented to the jury"; that it was impossible to determine whether the jury convicted defendant of possession of a firearm by a felon based upon the theory of actual or constructive possession or the theory of acting in concert; and that, "had [appellate] counsel made an argument pursuant to *Pakulski*, the remedy would have been a new trial." As a result, defendant contended that he was entitled to a new trial.

On 13 October 2016, the trial court entered an order denying defendant's motion for appropriate relief on the grounds "that no actual prejudice ha[d] been shown by the failure of the [d]efendant's appellate counsel to argue *Pakulski*, and that failure now to consider said argument [would] not result in a fundamental miscarriage of justice." On 13 December 2016, defendant filed a petition seeking the issuance of a writ of certiorari in the Court of Appeals authorizing review of the trial court's denial of defendant's motion for appropriate relief. On 29 December 2016, the Court of Appeals entered an order providing, among other things, that it had not held in *Collington I* "that defendant's claim of plain error was meritless irrespective of

whether his appellate counsel raised any arguments under [*Pakulski*]" and ordering that this case be remanded "to the trial court to enter an appropriate . . . order pursuant to N.C.G.S. § 15A-1420(c)(7). On 3 April 2017, the trial court entered an order granting defendant's motion for appropriate relief and awarding defendant a new trial in which it concluded, in pertinent part, that:

(2) The jury was incorrectly instructed on the theory of acting in concert but correctly instructed on actual and constructive possession.

(3) With no way to determine the jury's rationale for its guilty verdict, [d]efendant would have been entitled to a new trial if appellate counsel had made the proper argument pursuant to *Pakulski* on appeal.

(4) A reasonable attorney would have been aware of *Pakulski*, its application to [d]efendant's case, and the remedy of a new trial that it would provide.

(5) Appellate counsel's performance fell below an objective standard of professional reasonableness. While appellate counsel did argue that the instruction on acting in concert was invalid, he did not complete the argument by arguing that because disjunctive jury instructions were given, one of which was improper, and there was no finding as to the jury's chosen theory, there was plain error under *Pakulski* and [d]efendant is entitled to a new trial.

(6) But for appellate counsel's error, there is a reasonable probability that the Court of Appeals would have found plain error and granted [d]efendant a new trial.

(7) Defendant received ineffective assistance of counsel in violation of the Sixth Amendment.

On 17 May 2017, the Court of Appeals allowed the State's request for certiorari review of the trial court's order.

In seeking relief from the trial court's order before the Court of Appeals, the State argued that an acting in concert instruction "has never been held to be improper" in cases like this one and that, even if the delivery of the acting in concert instruction in this case was erroneous, the failure of defendant's appellate counsel to advance an argument in reliance upon *Pakulski* did not constitute deficient performance for purposes of the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In affirming the trial court's order, the Court of Appeals noted that, in *Collington I*, it had been "left to determine" merely "whether '[t]he jury reasonably could have believed that [d]efendant was in [actual or constructive] possession of' a gun from the evidence presented, regardless of the impropriety of the acting in concert instruction." *State v. Collington*, 259 N.C. App. 127, 138, 814 S.E.2d 874, 884 (2018) (*Collington II*) (first and third alteration in original). The Court of Appeals stated that, "had appellate counsel proffered the arguments under *Pakulski* [in *Collington I*], defendant would have secured a new trial upon simply demonstrating that the acting in concert instruction was given in error—plain error would be shown irrespective of the evidence admitted at trial in support of defendant's actual or constructive possession of a firearm." *Id.* at 141, 814 S.E.2d at 885. However, the Court of Appeals pointed out that "[a]ppellate counsel simply argued [in *Collington I*] that the theory of acting in concert is inapplicable to

the crime of possession of a firearm by a felon, without proffering any supporting authority as to why such an error would require a new trial." *Id.* at 141, 814 S.E.2d at 886. Had defendant's "appellate counsel . . . argued [in *Collington I*] that plain error was established pursuant to *Pakulski*, . . . [the Court of Appeals] would have, under the direction of *Pakulski*, been required to examine . . . whether the jury instruction on acting in concert was in fact improper." *Id.* at 143, 814 S.E.2d at 887. In addition, the Court of Appeals held that, "given the persuasiveness of defendant's argument that acting in concert is not an appropriate theory upon which to base a conviction of possession of a firearm by a felon, there is a reasonable probability that, had appellate counsel cited *Pakulski* [in *Collington I*], [the Court of Appeals] would have concluded [in that case] that defendant was entitled to a new trial." *Id.* As a result, the record seems to reflect that the substantive premise upon which defendant's ineffective assistance of counsel on appeal claim rested and upon which both the trial court and the Court of Appeals relied in granting defendant's motion for appropriate relief was a determination that defendant could not have been properly convicted of possession of a firearm by a felon on the basis of an acting in concert theory regardless of the state of the evidentiary record.

Although the manner in which the Court has chosen to decide this case rests upon what appears to me to be a correct analysis of the applicable legal principles, I am concerned that certain statements contained in our opinion may create unnecessary confusion in the substantive criminal law of North Carolina. In order to

obtain relief on the basis of ineffective assistance of appellate counsel in light of the theory alleged in defendant's motion for appropriate relief, a reviewing court would have to determine that the trial court erred by instructing the jury that it could convict defendant of possession of a firearm by a felon and that the delivery of this instruction constituted plain error. *State v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756, 780 (2000). Although the Court states that "the underlying issue of whether the trial court committed reversible error is not before this Court"; that "[t]he issue brought before the Court is whether defendant's appellate counsel was ineffective for failing to cite to the *Pakulski* line of cases"; and that "[w]e make no determination as to whether the trial court erred by instructing the jury on the acting in concert theory of guilt for the possession of a firearm by a felon charge," both the State and defendant presented arguments to this Court concerning the extent, if any, to which a defendant could lawfully be convicted of possession of a firearm by a felon in the briefs that they submitted for our consideration in this case. For that reason, the issue of whether defendant could have lawfully been convicted of possession of a firearm by a felon on the basis of an acting in concert theory does seem to me to be before us in this case.

Admittedly, neither this Court nor the Court of Appeals has directly held that a defendant can be convicted of possession of a firearm by a felon on the basis of an acting in concert theory. However, given that the Court of Appeals described defendant's argument that "acting in concert is not an appropriate theory upon which

to base a conviction of possession of a firearm" as "persuasive[ ]," *Collington II*, 259 N.C. App. at 143, 814 S.E.2d at 887, I think that it is important to note that both this Court, *see Diaz*, 317 N.C. at 552, 346 S.E.2d at 493 (holding that the record contained sufficient evidence "to support the jury's conclusion that defendant acted in concert with the traffickers to possess or transport in excess of 10,000 pounds of marijuana"), and the Court of Appeals, *see Diaz*, 155 N.C. App. at 314–15, 575 S.E.2d at 528–29 (holding that the trial court did not err by instructing the jury that it could convict defendant of possession of cocaine with the intent to sell or deliver on the basis of an acting in concert theory given that "there was evidence that the defendant had constructive possession *and* was acting in concert"); *State v. Garcia*, 111 N.C. App. 636, 640–41, 433 S.E.2d 187, 189 (1993) (holding that "[t]he evidence was sufficient for the trial court, when considering it in a light most favorable to the State, to find that defendant acted in concert with [another individual] to possess the cocaine"); *State v. Cotton*, 102 N.C. App. 93, 98, 401 S.E.2d 376, 379 (1991) (holding that "the trial court did not err in instructing on acting in concert for the [possession of cocaine with the intent to sell or deliver] offense"), have upheld controlled substance possession convictions on the basis of an acting in concert theory.[1] In addition, this

---

[1] Although the Court of Appeals awarded appellate relief to the defendants in *State v. Autry*, 101 N.C. App. 245, 254, 399 S.E.2d 357, 363 (1991); *State v. James*, 81 N.C. App. 91, 96–97, 344 S.E.2d 77, 81 (1986); and *Baize*, 71 N.C. App. at 530, 323 S.E.2d at 42, based upon an erroneous use of the acting in concert doctrine, those decisions rested upon a determination that the record before the Court did not contain sufficient information to prove that the individuals in question had engaged in concerted action rather than upon a determination that the doctrine of acting in concert had no application to possessory offenses.

Court held in *State v. Lovelace*, 272 N.C. 496, 498–99, 158 S.E.2d 624, 625 (1968), that the defendant had been properly convicted of possession of implements of housebreaking, with the items in question being a large screwdriver and a hammer, on the basis of evidence tending to show that the defendant and another man "were acting together" and "were attempting to use [the tools] to force entry into the restaurant" even though "the tools were only seen in the hands of [the other man]," suggesting that the doctrine of acting in concert is available to show a defendant's guilt of possessory offenses other than those involving contraband. *See also State v. Golphin*, 352 N.C. 364, 456–58, 533 S.E.2d 168, 228–29 (2000) (finding no error in the trial court's decision to instruct the jury that it could find that the defendant was guilty of possession of a stolen vehicle on the basis of an acting in concert theory in the course of also allowing the jury to convict the defendant of robbery with a dangerous weapon and first-degree murder in reliance upon the doctrine of acting in concert).

In apparent recognition of the general availability of the acting in concert doctrine in possession-related cases, defendant argues that "applying acting in concert to possession of a firearm by a felon impermissibly exceeds the plain statutory language that bans possession of a firearm only by a person with a felony conviction," citing *State v. Camp*, 286 N.C. 148, 151, 209 S.E.2d 754, 756 (1974) (stating that "where a statute is intelligible without any additional words, no additional words may be supplied") (citations omitted); N.C.G.S. § 14-415.1(a) (2019) (providing that "[i]t

shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm"). However, the same statutory language from N.C.G.S. § 14-415.1(a) upon which defendant relies in support of this argument also appears, in essence, in the criminal statutes relating to the unlawful possession of controlled substances, N.C.G.S. § 90-95(a)(1) and (a)(2) (2019) (providing that "it is unlawful for any person" to "possess" or "possess with intent to . . . sell or deliver" "a controlled substance"); the possession of implements of housebreaking, N.C.G.S. § 14-55 (making it unlawful to "be found having in his possession, without lawful excuse, any picklock, key, bit, or other implement of housebreaking"); and the possession of a stolen motor vehicle, N.C.G.S. § 14-71.2 (providing that "[a]ny person . . . who has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken" "shall be punished as a Class H felon"). For that reason, I am not persuaded, contrary to the suggestion made in the Court of Appeals' opinion, that the doctrine of acting in concert is not available in cases in which a defendant is charged with possession of a firearm by a felon as long as the State has presented sufficient evidence that the defendant has been previously convicted of a felony and has, acting in concert with another, had a firearm in his possession. Furthermore, I trust that the Court's statement that "[w]e make no determination as to whether the trial court erred by instructing the jury on the acting in concert theory of guilt for the possession of a firearm by a felon charge" will not be understood to cast doubt upon the potential

applicability of the doctrine of acting in concert to cases in which a defendant is charged with possession of a firearm by a felon and will be understood to be doing nothing more than expressing the Court's decision to refrain from deciding whether the acting in concert doctrine has any application in this case as a matter of fact.

Justice NEWBY joins in this concurring opinion.

Justice EARLS dissenting.

Mr. Collington's appellate counsel failed to make an argument on appeal that would have entitled him to relief. There is no record evidence to suggest that the oversight was a matter of strategy or consistent with the law as it existed at the time. The Court of Appeals, in two separate opinions, stated that this failure resulted in Mr. Collington's inability to obtain relief on appeal. The majority, however, holds that this was not ineffective assistance of counsel. I disagree, and therefore respectfully dissent.

On 3 April 2017, the Superior Court, Transylvania County, granted Mr. Collington's motion for appropriate relief (MAR), vacating his conviction and ordering a new trial. The Court of Appeals affirmed the trial court's order in a unanimous, published opinion filed on 17 April 2018. *State v. Collington* (*Collington II*), 259 N.C. App. 127, 814 S.E.2d 874 (2018). We allowed the State's petition for discretionary

review on 5 December 2018.[1]  Given the procedural posture and that neither party

has contested the trial court's findings of fact, those facts are binding on appeal.

*Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

The trial court made the following findings of fact, from which it concluded that

Mr. Collington's appellate counsel had rendered ineffective assistance:

> (1)    Defendant Jeffrey Tryon Collington went to trial on
> charges of possession of firearm by a felon, conspiracy to
> commit robbery with a dangerous weapon, and robbery
> with a dangerous weapon.  On 5 February 2014, a jury
> found Defendant not guilty of the robbery and conspiracy
> charges, and guilty of possession of a firearm by a felon.  He
> was sentenced as a habitual felon to a consolidated
> sentence of 86–115 months.
>
> (2)    On the possession of a firearm by a felon charge, the
> jury was instructed that it could find Defendant guilty
> under the theories of actual possession, constructive

---

[1] Review of non-capital motions for appropriate relief by this Court is presumably limited to extreme situations.  *Compare* N.C.G.S. § 15A-1422(f) (2019) ("Decisions of the Court of Appeals on motions for appropriate relief that embrace matter set forth in G.S. 15A-1415(b) are final and not subject to further review by appeal, certification, writ, motion, or otherwise."); N.C.G.S. § 7A-28 (2019) (same); N.C. R. App. P. 15(a) (prohibiting the filing of a petition for discretionary review of proceedings on motions for appropriate relief); N.C. R. App. P. 21(e) (stating that "the Supreme Court will not entertain . . . petitions for further discretionary review" in non-capital cases of motions for appropriate relief "determined by the Court of Appeals"); *with State v. Todd*, 369 N.C. 707, 710, 799 S.E.2d 834, 837 (2017) (holding that this Court may "exercise its rarely used general supervisory authority" to review otherwise-final Court of Appeals determinations on motions for appropriate relief).  It is striking that we should engage such rarely used constitutional authority in a case such as this, where there was no dissent in the Court of Appeals and even the majority suggests that the Court of Appeals' interpretation of our precedent was reasonable.  Until recently, the Court of Appeals' interpretation was also the interpretation of this Court.  *See State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) (applying our decision in *Pakulski* in a case involving plain error review).

possession, or acting in concert. The verdict sheets did not indicate under which theory the jury convicted Defendant.

(3)     On 22 December 2014, appellate counsel filed a brief arguing that 1) the Superior[ ] Court's jury instruction that Defendant would be guilty if he had acted in concert to commit the crime of possession of a firearm by a felon was plain error and 2) [t]he Superior Court's jury instruction that 'If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant . . . acting together with Clarence Featherstone with a common purpose to commit the crime of . . . possession of a firearm by felon, each of them if actually or constructively present, is guilty of possession of a firearm by felon,' was plain error.

(4)     Appellate counsel failed to argue that under *State v. Pakulski*, when disjunctive jury instructions are paired with an improper jury instruction, and there is no finding as to the jury's chosen theory, the defendant is entitled to a new trial. *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987).

(5)     On 7 July 2015, the Court of Appeals ruled that assuming the acting in concert instruction was improper, that alone does not rise to the level of plain error. As appellate counsel did not raise a *Pakulski* argument, the Court of Appeals was not able to consider it.

(6)     Defendant, through appellate counsel, filed a Petition for Discretionary Review to the North Carolina Supreme Court, and it was denied on 24 September 2015.

(7)     On 30 March 2016, Defendant filed a Motion for Appropriate Relief on the grounds that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution because his appellate counsel failed to raise the *Pakulski* argument on appeal that plain error was committed because the trial court instructed the jury on disjunctive theories of a crime, one of which was improper, and the record does not show upon which theory the jury relied. Defendant's MAR was denied on 13 October 2016.

(8) Defendant filed a petition for Writ of Certiorari in the North Carolina Court of Appeals on 13 December 2016. On 29 December 2016, the Court of Appeals issued an order vacating the 13 October 2016 order on Defendant's MAR and remanding the case to the trial court to enter an appropriate dispositional order.

When evaluating whether a defendant received effective assistance of counsel, we conduct a *Strickland* analysis. *State v. McNeill*, 371 N.C. 198, 218, 813 S.E.2d 797, 812 (2018); *see Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The first step of the analysis is "whether counsel's representation 'fell below an objective standard of reasonableness.' " *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S. Ct. 1473, 1482 (2010) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). "[E]ven an isolated error of counsel" may violate the Sixth Amendment right to effective assistance of counsel "if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986). Where appellate counsel "ha[s] researched the question, but ha[s] determined that the claim [is] unlikely to succeed," *Smith v. Murray*, 477 U.S. 527, 531–32, 106 S. Ct. 2661, 2665 (1986), and therefore does not pursue the claim on appeal, counsel has not rendered ineffective assistance, *id.* at 535–36, 106 S. Ct. at 2667. The important question, however, is whether the decision not to pursue a claim was the result of reasoned judgment or merely an error. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983) ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, *as*

*a matter of professional judgment*, decides not to present those points." (Second emphasis added.)). Where "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," the first prong of the *Strickland* test has been met. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000).

The majority provides two reasons for reversing the decision of the Court of Appeals, stating (1) that "defendant's appellate counsel did, in fact, make the arguments he should have made, albeit by reference to different authority" and (2) that "the opinion in *Pakulski* employed a standard of review different from the standard of review applicable in the instant case." Both statements are inaccurate. First, the majority mischaracterizes the failure of appellate counsel and, in doing so, ignores both the trial court's findings of fact and the statements of the Court of Appeals. Second, the majority misidentifies the standard of review employed in *Pakulski* and, as a result, misstates *Pakulski*'s applicability to this case.[2]

---

[2] The majority goes to great lengths to explain the importance of distinguishing between plain error review, applied to unpreserved instructional error in criminal cases, and harmless error review, applied to preserved instructional error. The majority even goes so far as to invoke "the extensive precedent of this Court" distinguishing preserved error from unpreserved error to justify its decision. There is no question that, as the majority notes, "unpreserved issues related to jury instructions are reviewed under a plain error standard, while preserved issues are reviewed under a harmless error standard." The difference between the two types of review is not at issue in this case. The rule stated by this Court in *State v. Pakulski*, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987) is one of plain error review. As a result, in arguing for *Pakulski*'s applicability to this case, this dissent does not suggest that harmless error review should apply to unpreserved issues.

I.

Mr. Collington's appellate counsel provided ineffective assistance by failing to properly identify the error in the jury instruction. The majority states that "[t]he Court of Appeals concluded that appellate counsel was ineffective for failing to cite *Pakulski*." This is incorrect. The trial court's finding on this fact is instructive. It stated the following:

> (4)      Appellate counsel failed to argue that under *State v. Pakulski*, when disjunctive jury instructions are paired with an improper jury instruction, and there is no finding as to the jury's chosen theory, the defendant is entitled to a new trial. *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987).

The Court of Appeals decision below is similarly instructive. In describing the argument of Mr. Collington's appellate counsel, the Court of Appeals stated the following:

> Defendant appealed his conviction of possession of a firearm by a felon to this Court, arguing "that the trial court committed plain error by providing the jury with an instruction on acting in concert with respect to the charge of possession of a firearm by a felon." [*State v. Collington* (*Collington I*), No. COA-14-1244, 2015 WL 4081786, at] *7 [(N.C. Ct. App. 2015) (unpublished)]. Defendant specifically argued "that this instruction impermissibly allowed the jury to convict Defendant of possession of a firearm by a felon based on [his brother]—also a convicted felon—reportedly receiving the gun from Mr. Sapp in a McDonald's parking lot on the evening of 1 October 2012." *Id.*

*Collington II*, 259 N.C. App. at 130, 814 S.E.2d at 879.

While this may seem like a minor point, it is actually very important in the context of this case. The majority attempts to recast the argument that appellate counsel actually made, writing that "appellate counsel argued that the jury was presented with multiple theories of guilt, one of which was erroneous, and that the error 'had a probable impact on the jury's finding that the defendant was guilty.'" This statement is wrong when measured against the trial court's findings of fact and the Court of Appeals decision below. But more importantly, it obfuscates the import of appellate counsel's error. The problem with the jury instruction was not only that the trial court submitted an erroneous instruction to the jury. The instructional error was that an erroneous instruction was paired with a non-erroneous instruction, which allowed the jury to return a guilty verdict in an array of circumstances wider than the law permits.[3] That instructional error is what appellate counsel failed to identify and argue to the Court of Appeals in *Collington I*.

As a result, the majority is incorrect when it states that "defendant's appellate counsel did, in fact, make the arguments he should have made, albeit by reference to different authority." As the Court of Appeals stated, "defendant's appellate counsel did not . . . argue that because it could not be determined from the record whether

---

[3] It is, of course, the inability of an appellate court to determine where in that array of circumstances a jury has situated its verdict when "we cannot discern from the record the theory upon which the jury relied" which leads to *Pakulski*'s rule that "we resolve the ambiguity in favor of the defendant." *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326. The important point, though, is that the problem of appellate review and attendant remedy presented in *Pakulski* is distinct from the identification of the error. The former is, in the majority's view, implicated by the relevant standard of review. The latter, however, is not.

the jury relied upon the improper or the proper instruction, plain error was established." *Collington II*, 259 N.C. App. at 138, 814 S.E.2d at 883. As the trial court's findings of fact note, "[a]ppellate counsel failed to argue that . . . when disjunctive jury instructions are paired with an improper jury instruction, and there is no finding as to the jury's chosen theory, the defendant is entitled to a new trial."

Appellate counsel instead argued, as the trial court notes in its findings of fact, that "the Superior[ ] Court's jury instruction that Defendant would be guilty if he had acted in concert to commit the crime of possession of a firearm by a felon was plain error." The effect of counsel's mistake is apparent in the first Court of Appeals opinion. *See Collington I*, 2015 WL 4081786, at *1–4. Had counsel made the appropriate argument, the Court of Appeals would have first considered the full extent of the instructional error and would have second considered whether the trial court's error "had a probable impact on the jury's finding that the defendant was guilty." *See State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). However, because counsel failed to accurately describe the error, arguing only that a theory of guilt presented to the jury was erroneous, the Court of Appeals instead conducted a sufficiency of the evidence analysis. *See Collington I*, 2015 WL 4081786, at *4 (concluding that there was not plain error because "[t]he jury reasonably could have believed that Defendant was in possession of Mr. Sapp's gun" after noting that defendant conceded in his brief that the evidence was legally sufficient to convict on a proper instruction and discounting any evidence put on by defendant at trial). If

counsel had appropriately framed the argument, the Court of Appeals would have

reached a different result.  The Court of Appeals itself noted this fact, as follows:

> Finally, Defendant has not presented this Court with any
> arguments under *State v. Pakulski*, 319 N.C. 562, 574, 356
> S.E.2d 319, 326 (1987), which held that a trial court
> commits plain error when it instructs a jury on disjunctive
> theories of a crime, where one of the theories is improper,
> and "we cannot discern from the record the theory upon
> which the jury relied[.]" "It is not the role of the appellate
> courts . . . to create an appeal for an appellant." *Viar v. N.C.
> Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360,
> 361 (2005). Therefore, Defendant has not met his "burden"
> of establishing that the trial court committed plain error in
> the present case. See *Lawrence*, 365 N.C. at 516, 723 S.E.2d
> at 333.

*Id.* (alteration in original).  Given this failure by appellate counsel, the majority's

discussion of whether plain error or harmless error review applies is beside the point.

Regardless of the appropriate standard of review, appellate counsel failed to correctly

identify the error and pursue it on appeal.  The record contains no evidence that this

mistake resulted from reasoned judgment or that it was a strategic decision.  As a

result, Mr. Collington received ineffective assistance of appellate counsel, and there

is no basis for this Court to overturn the decisions to the contrary by both the trial

court and the Court of Appeals.

## II.

The majority is also wrong to assert that *Pakulski* does not apply to this case.

The majority describes the analysis of the Court of Appeals as a "misidentification of

the standard of review applied in *Pakulski*."  However, it is the majority which

incorrectly identifies *Pakulski*'s standard of review. In reality, *Pakulski* applied the plain error standard of review and *Pakulski* is applicable to Mr. Collington's case.

The majority writes that "it appears that we applied the harmless error standard of review in *Pakulski*" because the opinion uses the word "harmless" once when describing one of the State's arguments. It is more instructive, I think, to look at the briefs actually filed in that case, as well as the transcripts of the trial court proceedings, which reveal (1) that the instructional error was not preserved and (2) that both the State and defense counsel argued in their briefs that the appropriate standard of review was plain error.

The record in *Pakulski* makes clear that the error in that case was unpreserved, as neither defense counsel objected to any instruction proposed at the charge conference. Instead, defense counsel requested additional instructions and did not object when the felony murder instruction was discussed. The following is the transcript of the trial proceedings in *Pakulski* as they relate to this question. Mr. Buchanan is the prosecutor, Mr. Moody is Pakulski's defense attorney, and Mr. McLean is the attorney for Pakulski's co-defendant:

> COURT: Well– All right. I'm waiting on that bill. I don't have it before me. Now, let's talk about the precharge conference. I think we'd better do it before the arguments. On the murder charge what– First, what does the State say how the case ought to be submitted to the jury?
>
> MR. BUCHANAN: May it please Your Honor, the State is of the opinion that the evidence would support possibly 4 verdicts in the murder case of guilty of murder in the first degree in the perpetration of a felony; two, guilty of first

degree murder with malice and premeditation and deliberation; or thirdly, guilty of murder in the perpetration of a felony and with malice and premeditation and deliberation; not guilty.

COURT:     Well, it can't be–

MR. BUCHANAN: You asked me.

COURT:     Let me ask:  Do you think that there was premeditation?

MR. BUCHANAN: Yes, Your Honor, the State does feel that there is sufficient evidence to support such a charge.

COURT:     Because of the evidence that Pakulski said that he was going to kill–

MR. BUCHANAN: Yes, Your Honor.

COURT:     The evidence also shows that he wasn't looking for him at that time and it was just a chance that he happened to see him.

MR. BUCHANAN: Yes, Your Honor.  The State certainly concedes that.

COURT:     Let me look at this other bill I didn't have.

(The court examined a document.)

COURT:     Well, I think I'll submit it only on the theory of murder in the perpetration of a felony.

MR. BUCHANAN: Yes, Your Honor.

MR. MOODY:     Your Honor, might we inquire what would be the underlying felony?

COURT:     Well, I think there are two, but actually the felony would be breaking and entering and robbery.  I think robbery is of the-- Well, they are just so interlocking that–

MR. MOODY:     Yes, sir.

COURT:     I may submit the breaking and entering.  I don't know.  Well, I probably will.  Now, on the– Well, let me say this before we go any further.  Let me give you this.  If you'll come up here, let me show you how I'd like you to make the form for the verdict sheet.

. . .

COURT:     Anything else you gentlemen want to say about any particular thing concerning the charge?  I'll give them the routine charge on each of those alleged offenses, and if you like I want to inquire now if you want me to instruct the jury concerning the defendants not testifying.

MR. MOODY:     Yes, sir.  The defendant Pakulski would request that instruction, just a standard instruction on that–

COURT:     All right.

MR. MOODY:     –as well as an instruction on reasonable doubt and the effect of the immunity granted to Mr. Chambers.

COURT:     Yes, sir, I'll do all that.  What about you?  Do you want me to instruct them on the defendant's failure to testify?

MR. MCLEAN:     Yes, sir.  I would ask the Court– I believe it's 101.30.

COURT:     I don't know what you are talking about.

MR. MCLEAN:     It's the effect of the defendant's decision not to testify.  That's that pattern instruction.

COURT:     Well, I don't have that with me.

MR. MCLEAN:     I've got it here, Your Honor.  I'll present it to you.

COURT:     Well, I don't need it.

MR. MCLEAN:     Okay.  And also I would ask that the

Court instruct–this is called in pattern of jury instruction 105.20, but let me tell you what it's about. It's about prior inconsistent statements. We would ask that this instruction be given based on Mr. Chambers prior–

COURT: Excuse me just a minute. Let me get it down.

MR. MCLEAN: Yes, sir.

COURT: And the accomplice charge would be part of that. All right, now.

MR. MCLEAN: And along that same thing since we've asked for that charge, we were asking in addition or I am to charge impeachment by prior inconsistent statement under–

COURT: Well, let me see what you've got on that. I know about what I would tell them.

MR. MCLEAN: Yes, sir. It may be the same thing. I'm just wanting to–

COURT: Well, I don't know. I don't have any set–

(Mr. McLean handed the Court a document.)

COURT: Okay. All right.

MR. MCLEAN: And the other that mister–

COURT: If I overlook that, call it to my attention. I don't think I will.

MR. MCLEAN: Yes, sir. Of course, the standard burden of proof and those types of charges we would ask.

COURT: All right, Okay. Does that cover it?

MR. MOODY: Yes, sir, Your Honor. [The discussion continues on other matters.]

Transcript of Record at 1242–48, *Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (No.
256PA85) [hereinafter *Pakulski* Transcript].

Defense counsel also did not object to the instruction when it was given. After
closing arguments, the trial court instructed counsel that it would ask if there were
any objections to the jury charge after the instructions were given and that any
objections would be included in the record at that point. *Pakulski* Transcript at 1339.
Defense counsel agreed. *Id.* After giving the instructions to the jury, the trial court
asked whether counsel had any objections, and counsel replied that they did not.
*Id.* at 1365. The next morning, after the jury left the courtroom to begin their
deliberations, the State approached the bench and had a discussion with the trial
court, the contents of which were not recorded. *Id.* at 1366. The trial court then
stated the following: "Let the record show further that at the conclusion of the charge
the defendants make a general objection to the charge." *Id.*[4]

---

[4] The record in *Pakulski* shows that defense counsel did not object to the felony-murder
jury instruction at the charge conference, before the instructions were given, or after the
instructions were given. The majority points to a line in the *Pakulski* opinion indicating that
defense counsel moved to dismiss on the grounds of insufficient evidence to charge the jury
on a theory of felony murder. *See Pakulski*, 319 N.C. at 571, 356 S.E.2d at 325. The majority
suggests that this was sufficient to preserve an exception to the jury instruction because it
"serv[ed] the purpose of the contemporaneous objection now required by N.C. R. App. P.
10(a)(2)." I note that the preservation requirements for exceptions to jury instructions
remain substantially unchanged from those in existence at the time *Pakulski* was decided.
*Compare* N.C. R. App. P. 10(b)(2), 312 N.C. 814 (1984) (repealed 1989) *with* N.C. R. App. P.
10(a)(2). Indeed, the requirements in effect at the time that *Pakulski* was decided were more
onerous, requiring that "an exception to instructions given the jury shall identify the portion
in question by setting it within brackets" or making other clear reference in the record on
appeal.

This Court in *Pakulski* ruled that the felony-murder instruction given to the jury was erroneous and warranted reversal. *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326. The record very clearly indicates that defense counsel in *Pakulski* never objected to the jury instruction at trial that we subsequently ruled was in error.[5] As the majority notes, "unpreserved issues related to jury instructions are reviewed under a plain error standard." This makes *Pakulski* a plain error case. *See State v. Tucker*, 317 N.C. 532, 536, 346 S.E.2d 417, 420 (1986) ("Since defendant failed to object to these instructions at trial, we consequently must consider whether they rise to the level of plain error . . . ."); *see also* N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").[6] The majority is wrong to assert that the Court in *Pakulski* applied the harmless error standard of review.

---

[5] The trial transcript does indicate that the defendant made a general motion to dismiss at the close of the State's evidence, and another at the close of all evidence. *Pakulski* Transcript at 725, 1249. Both motions were denied. *Id.* at 728, 1249.

[6] In fact, the parties in *Pakulski* did "specifically and distinctly contend[]" that "the judicial action questioned . . . amount[ed] to plain error." *See* N.C. R. App. P. 10(a)(4). Both defense counsel and the State argued in their briefs that the appropriate standard for our decision was plain error. Brief for Defendant-Appellant Pakulski at 34, *Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (No. 256PA85) ("On the facts of this case, the instructions on felony murder based on breaking or entering were plainly erroneous."); Brief for State-Appellee at 22, *Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (No. 256PA85) ("Thus, [the trial court's] jury charge appears reviewable only for plain error. See State v. Odom, 307 N.C. 355, 300 S.E. 2d 375 (1983).").

It does not aid the majority that *Pakulski* is paired with the words "harmless error" in a scant reference thirty-one years[7] after *Pakulski* was issued. In *State v. Maddux*, we stated in a footnote that *Pakulski* did not apply to the defendant's case because it "is not applicable to plain error cases." 371 N.C. 558, 567 n.11, 819 S.E.2d 367, 373 n.11 (2018). Two months later in *State v. Malachi*, in another footnote, we stated that "[t]his Court did discuss the harmless error issue in *Pakulski*." 371 N.C. 719, 732 n.5, 821 S.E.2d 407, 417 n.5 (2018). These passing references do not, as the majority claims, clarify that *Pakulski* is a harmless error case. Indeed, those two passing references are simply wrong. *See State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) (applying *Pakulski* where it does not appear that the defendant objected to the jury instruction at trial); *see generally Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (containing no indication that the defendant specifically objected to any jury instruction). Given that the actual record in *Pakulski* clearly shows that *Pakulski* is a plain error case, the majority should not read it otherwise.[8]

---

[7] The long-standing nature of our decision in *Pakulski*, along with the fact that it seems to have been consistently applied as a plain error case for thirty-one years after its issuance, suggest that the majority's concern about "creat[ing] a subset of cases in which an unpreserved issue relating to jury instructions qualifies for harmless error review" is unfounded.

[8] The majority seems concerned that acknowledging that *Pakulski* is a plain error case, thereby applying its rule to cases of unpreserved error, would apply too lenient a standard of review and undermine "the important interests promoted by clear rules related to issue preservation." Honoring *Pakulski*'s promise would do no such thing. Instead, it would prevent appellate courts from keeping defendants in prison on an impermissible theory of guilt when "we cannot discern from the record the theory upon which the jury relied." *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326. Thus, the rule in *Pakulski* is designed to address precisely the type of "*fundamental* error, something so basic, so prejudicial, so

Thus, *Pakulski* is a plain error case, and Mr. Collington is entitled to relief.[9] At trial, according to the trial court's findings of fact, Mr. Collington's jury was instructed with respect to the possession of a firearm by a felon charge "that it could find Defendant guilty under the theories of actual possession, constructive possession, or acting in concert." The jury found him guilty of possession of a firearm by a felon and the "verdict sheets did not indicate under which theory the jury convicted Defendant."

In *Pakulski*, we held:

> Where the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant.

319 N.C. at 574, 356 S.E.2d at 326. It does not matter if "the jury could have based its verdict solely" on the permissible theory if "the verdict form does not reflect the theory upon which the jury based its finding of guilty." *Id.* Mr. Collington's appellate counsel did not make that argument. For that reason, his appellate counsel was deficient. *See Robbins*, 528 U.S. at 285, 120 S. Ct. at 764 (stating that appellate

---

lacking in its elements that justice cannot have been done" to which the plain error rule is directed. *See State v. Lawrence*, 365 N.C. 506, 516–17, 723 S.E.2d 326, 333 (2012) (emphasis in original) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

[9] As discussed in Part I of this dissent, Mr. Collington is entitled to relief even if *Pakulski* were a harmless error case.

counsel is deficient where "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them").

The deficiency is particularly egregious in this case because of the facts. The only evidence presented at trial that Mr. Collington possessed a firearm, either actually or constructively, came from the testimony of Christopher Hoskins. Mr. Hoskins testified that Mr. Collington held a gun while Mr. Collington was robbing him. However, while the jury found Mr. Collington guilty of possession of a firearm by a felon, the jury found him not guilty of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. It seems more likely, then, that the jury found Mr. Collington guilty of possession of a firearm based on his own testimony. During trial, Mr. Collington testified that his brother, Clarence Featherstone, received a gun from Dade Sapp later in the evening. This supports the conclusion that the jury based its verdict on the acting in concert theory rather than on actual or constructive possession.

Mr. Collington's appellate counsel had an obligation to present the argument to the Court of Appeals which would have allowed that court to ensure that Mr. Collington was not convicted of possession of a firearm based on someone else's possession. Because Mr. Collington's counsel did not meet that obligation, Mr. Collington clearly received ineffective assistance of appellate counsel and is entitled to a new trial. I respectfully dissent.

Justice DAVIS joins in this dissenting opinion.